**ANCORA CORPORATION et al.,
Plaintiffs-Appellees,**

v.

**John E. STEIN et al., Defendants,**

**Bart B. Chamberlain, Jr., Defendant-
Appellant,**

**Cornwall Trading Corporation, Defend-
ant-Appellant.**

**No. 30327.**

United States Court of Appeals,
Fifth Circuit.

June 14, 1971.

Lester M. Bridgeman, Washington, D. C., Lewis G. Odom, Jr., Montgomery, Ala., John V. Long, Washington, D. C., John C. H. Miller, Jr., Montgomery, Ala., for appellant Bart B. Chamberlain, Jr.

Champ Lyons, Jr., Montgomery, Ala., for appellant, Cornwall Trading Corporation; Capell, Howard, Knabe & Cobbs, Montgomery, Ala., of counsel.

Willis C. Darby, Jr., Robert E. Gibney, Mobile, Ala., for plaintiffs-appellees.

Before TUTTLE, WISDOM and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge.

On March 31st, 1966, appellees, Ancora Corporation, et al., filed an original suit in the United States district court for the Southern District of Alabama against one, Stein, as unit manager, Citronelle Unit, for an injunction to prohibit Stein from taking possession of eight oil wells owned and operated by Ancora in the Citronelle Field, Mobile County, Alabama. On March 27th, 1967, Ancora, with leave of court, amended its complaint to add Chamberlain, Cornwall and others as party defendants, alleging for the first time three counts for an injunction and damages under the federal antitrust laws. Chamberlain and Cornwall filed their answers denying the material allegations of Ancora's amended complaint on May 15th, 1967. On September 4th, 1968, and September 27th, 1968, Chamberlain and Cornwall, respectively, pursuant to rule 15(d) of the Federal Rules of Civil Procedure, moved the district court for leave to amend and supplement their defensive pleadings by adding a counterclaim.

In their tendered counterclaim, Chamberlain and Cornwall alleged that Ancora, for the ulterior motive of extortion, to delay the effective benefits that would otherwise have flowed to Chamberlain and Cornwall for the purpose of requiring an agreement from other members of the Citronelle Unit from an enlargement proceeding decided by the

State Oil and Gas board of Alabama relating to the establishment of a "lease line arrangement" between or among the secondary recovery units in the Citronelle Field, "filed and prosecuted and utilized", the suit with the intent and effect of delaying effectuation of the enlargement order; that the filing of the anti-trust complaints against them was neither "filed or prosecuted in good faith to obtain the relief ostensibly sought thereby." It was alleged that "Ancora intended, and attempted to utilize, those actions for the ulterior objective of extorting from the operators of the Citronelle unit, including Chamberlain, benefits and concessions to the counterclaim defendants, including but not limited to, a lease line agreement then and now the subject of a different proceeding pending before the board. That objective was not one properly obtainable by way of relief in any of the said judicial proceedings."

The trial court denied the motion to permit Chamberlain and Cornwall to file the counterclaim, determining that the tendered counterclaim failed to allege facts upon which relief could be granted. The court based its decision upon its determination that "the defendants [the counterclaimants] contend their respective counterclaims state a cause of action for 'abuse of process'". The trial court then stated "it is the conclusion of the court that if the defendants have a cause of action, construing the pleadings most strongly in favor of them, it is for malicious prosecution, and they have failed to state a cause of action for abuse of process."

A careful reading of the counterclaim filed by the appellants, leaves this court in no doubt that the counterclaim was posited on a much broader basis than either for "abuse of process" or for "malicious prosecution" (or its civil counterpart), and that the trial court, having focused too closely on a theory of recovery that was not expressly asserted by the counterclaimants, and that would not, in any event, be binding under the liberal pleadings rules of the federal rules, failed to apprehend that the counterclaims did, in fact, allege a state of facts that went beyond either of the two formally described causes of action mentioned by the trial court.

It is true that the counterclaimants here, take issue with the trial court's legal determination that they could not, in fact, proceed on the theory of "abuse of process" as defined under the Alabama decisions. They contend, stated briefly, that their counterclaim falls strictly within the purview of Clikos v. Long, 231 Ala. 424, 165 So. 394, an Alabama case describing the difference between abuse of process and malicious prosecution. They also say that they meet requirements set out in Dickerson v. Schwabacher, 177 Ala. 371, 58 So. 986, where the Alabama Supreme Court said:

> "One essential difference between the actions is that malicious prosecution refers to malice and wrong in the issuance of the process, while abuse of the process refers to the malicious and wrongful use of process which is regular and rightful in its issuance. * * A malicious abuse of legal process consists in the malicious misuse or misapplication of that process to accomplish some purpose not warranted or commanded by the writ. In brief, it is the malicious perversion. * * * "

We are not convinced that the counterclaim sets out a clear case of abuse of process, as recognized under the Alabama decisions. These cases seem to hold that for such an action to be sustained, the complaint must allege that the action causing damages to the plaintiff must allege that a suit had been legally filed for a proper purpose, but that, once filed, the process of the court, such as a writ of attachment or the like, had been improperly used. In other words, the Alabama courts appear not to have recognized, as the basis of an abuse of process suit an allegation that the suit was originated out of an improper motive and solely for the purpose of harassment of the complaining party.

**434**

So, too, we are not convinced by appellant's arguments that the trial court was in error in concluding that an action for malicious prosecution would be premature until a final judgment had been entered against the charged person.

However, there appears in this counterclaim to be much more. It asserts a continuous course of action beginning, as it is alleged, and as we must accept as true for the purpose of this appeal, not to vindicate a proper or legal right of the plaintiffs in the action, but for the oppressive and illegal purposes of coercing from the counterclaimant's action in a collateral matter.

Since the trial court did not consider this posture of the case, we do not have the benefit of its views as to the exact nature of the case that must be made out by a plaintiff who seeks to recover for the wrongful interference with Chamberlain and Cornwall's business which appellants allege as an alternative cause of action which is implicit in their counterclaim. However, it does appear from the cases cited by appellants, Birmingham Broadcasting Company v. Bell, 259 Ala. 656, 68 So.2d 314, Carter et al. v. Knapp Motor Company, Inc., 243 Ala. 600, 11 So.2d 383, and this court's decision of Kelite Products, Inc., et al. v. Binzel, 5 Cir., 224 F.2d 131 that this was not a case in which the trial court could, on the existing motions, determine that "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim," Banco Continental v. Curtiss National Bank of Miami Springs, 5 Cir., 406 F.2d 510, 514, the standard which this court had adopted when considering the propriety of a dismissal for failure to state a claim.

The appellees here contend that this theory of the counterclaimants is asserted for the first time in this court, and that under the general rule a party cannot for the first time assert before the appellate court, as grounds for reversal, a theory which was not presented to the lower court, and which is different from the theory on which the lower court made its decision. See Kolkey v. Grossinger, 5 Cir., 195 F.2d 525. To the contrary, appellants point in their brief to a trial memorandum, in support of the motion for leave to file the counterclaim, in which it is stated as follows: "Chamberlain's claim is one essentially charging plaintiffs with tortious interference with business relations and prospective economic advantage. The device chosen by plaintiffs to accomplish that result was litigation—in both the state courts and this court. Chamberlain's claim, in terms of conventional classifications, is *analogous* to one for abuse of process."[1] (Emphasis added.)

Appellees also contend that the specific actions mentioned in the counterclaim had been filed more than a year prior to the filing of the counterclaim and, thus, the counterclaim was barred by the state's statute of limitations of one year. There is nothing in the record before us that indicates that the appellees raised the issue of the statute of limitations in the trial court. Such a defense is personal to the party asserting it and it, of course, may be waived. Tolbert v. City of Birmingham, et al., 262 Ala. 674, 81 So.2d 336, Van Sant v. American Express Company, 3 Cir., 169 F.2d 355. In any event, it appears from the judgment of the trial court that the issue of the statute of limitation was not considered by that court, since the court dismissed the complaint expressly on the ground

1. While, unfortunately, the record in this case is one that was burned during a destructive fire in the office of the Clerk of our court, no challenge has been made by appellees to this statement made by appellants in their reply brief. We therefore, assume that it correctly states the contents of a memorandum filed in the district court on November 24, 1969. It, therefore, appears that this precise point was presented to the trial court, and it, thus, may be considered by us, as we undertake to construe the language of the counter complaint to determine whether it asserts facts upon which relief might be granted.

that it failed to allege facts upon which relief could be granted. The defense of the statute of limitations, in light of the allegations of this complaint, even if not waived, would raise issues of fact, because of the allegations in the counterclaim speaking in terms of proceedings being "filed, *prosecuted and utilized* with the intent and effect of delaying, etc." (Emphasis added.) Moreover, it appears in the memorandum filed in support of the motion for counterclaim that on October 25, 1967, well within the statutory period, the appellees increased their original claim of $2,250,000 damages to single damage claims against the counterclaimants of $3,400,000, which the counterclaimants point to as being actions *in terrorem,* and part of the illegal coercive action. Furthermore, the record discloses that in November, 1967, well within the statute of limitations, the president of Ancora filed with the Alabama Supreme Court in which there was still pending a phase of the state court litigation, and criticised by the counterclaimants as being part of the scheme for extortion, a brief seeking to have that court affirm the judgment of the circuit court of Alabama which had set aside the action of the "Oil and Gas Board".[2]

Thus, it does not appear on the face of the pleadings that the statute of limitations would bar the proceedings, even if such a defense had been filed by the appellees.

We do not intend to intimate what the final outcome of these proceedings may, or should, be; we conclude only that the trial court erred in dismissing the counterclaim on the ground that it did not fit within the traditional framework of a suit for "abuse of process" and that an action for "malicious prosecution"

(or its civil counterpart) would be premature without a judgment favoring the counterclaimants.[3]

The dismissal of a complaint for failure to allege a state of facts on which relief can be granted is a useful tool under the federal rules. Unfortunately, it is used in some instances where the parties in diversity cases focus too closely on state strait-jacket procedures, by seeking to fit a state of facts into a recognized "cause of action." We conclude that this is such an instance.

The judgment is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

---

2. The Supreme Court of Alabama subsequently reversed the judgment of the circuit court, and reinstated the Oil and Gas board's judgment, favorable to the counterclaimants.

3. It is for the trial court initially to determine what, if any, effect is to be given in its consideration of this second cause of action now that it appears that the Supreme Court of Alabama has made a final judgment against the appellees, a matter which appellants sought to set up by amending their proffered counterclaim, but which motion was denied by the trial court.