William C. RAMSEY and Johnny Ray
King, Plaintiffs-Appellants,
Cross-Appellees,

v.

James T. LEATH, Dan Chandler and
George Daly, Defendants-Appellees,
Cross-Appellants.

No. 81–7683.

United States Court of Appeals,
Eleventh Circuit.

June 9, 1983.

Thomason & Russell, J. William Thomason, Bessemer, Ala., for plaintiffs-appellants, cross-appellees.

Thomas, Taliaferro, Forman, Burr & Murray, C.V. Stelzenmuller, Irvin C. Porter, Birmingham, Ala., for defendants-appellees, cross-appellants.

Before KRAVITCH, HATCHETT and CLARK, Circuit Judges.

PER CURIAM:

Appellants Ramsey and King initiated this action, with other plaintiffs,[1] in the Circuit Court of Jefferson County, Alabama in January of 1978. Appellants were officers of the Irondale Police Department. Appellants alleged that the appellees Leath, Chandler, and Daly discriminated against appellants to abridge their rights under the first, fifth, and fourteenth amendments of the Constitution. When the incidents giving rise to this action occurred, Leath served as mayor of Irondale and Chandler and Daly were city councilmen. Specifically, appellants alleged that appellees demoted appellants from sergeants to patrolmen without probable cause to believe that appellants were guilty of acts or omissions which justified such disciplinary action. Appellants alleged that they were demoted because they belonged to a labor organization.

On the motion of appellees, the action was properly removed to the federal district court for the Northern District of Alabama. Appellees then filed an answer and counterclaim alleging that appellants brought the present action and a prior identical action, which was dismissed on August 18, 1977 on plaintiffs' motions, for the purpose of forcing Irondale to recognize the labor union as the collective bargaining agency for the police force. Appellees alleged that the appellants brought the actions maliciously and without foundation in order to harass and intimidate appellees. Appellees sought damages and attorneys' fees from the plaintiffs.

The parties filed numerous affidavits and depositions in the district court, divulging the following facts. On April 21, 1977, the Alabama Brotherhood of Law Enforcement Employees, Local 1312, notified the City of Irondale that it represented the police officers of Irondale. Mayor Leath first received notice of this representation on April 24, 1977, but disregarded it on the city attorney's assurance that the city had no duty to recognize the union.

On April 26, 1977, the city council held a meeting at which Chief of Police W.C. McSween recommended that the councilmen demote officers King and Ramsey from sergeants to patrolmen. Chief McSween told the council members that Sergeant King had failed to properly supervise a subordinate and that Sergeant Ramsey had violated a rule of the Irondale Police Department by organizing a meeting of all police officers without the consent of the chief of police. The entire city council voted in favor of the demotions. Chief McSween gave immediate written notice to both officers informing them of the action by the council and the reasons for their demotions.

The depositions and affidavits filed in this case demonstrate that there was a factual basis for the disciplinary actions taken against Ramsey and King. The council acted against Ramsey because he organized a meeting of the entire police force without the consent of the chief of police as required by police department rule. Prior unsuccessful efforts had been made by

1. The other original plaintiffs in this action were the Alabama Brotherhood of Law Enforcement Employees, Local 1312, Laborers International Union of North America, AFL–CIO, Joe Allen Boartfield, Rex W. Winchester, Clarence Cunningham, and Mike Phillips. On April 3, 1978, the district court dismissed the claims of the Alabama Brotherhood of Law Enforcement Employees. The claims of Winchester, Cunningham, and Phillips were dismissed by the district court on October 31, 1978. After Boartfield refused to submit himself for a deposition, his claims were dismissed pursuant to Fed.R.Civ.P. 37 on November 21, 1979.

The appeal before this court is concerned solely with the claims of Ramsey and King and the counterclaims of the appellees.

some of the policemen to meet with the city council concerning their problems. Chief McSween had informed Ramsey that he would ask the mayor and council to meet with the policemen, but such a meeting was never held. Instead, the city council continued to meet with just the police chief, in accordance with normal procedures, to consider problems of the police force. Unsatisfied with this procedure, Ramsey encouraged the other police officers to attend the regular April 5 council meeting and remain afterward for their own meeting. All but one member of the police force, including on-duty members, appeared at the April 5 meeting. The officers held this meeting without the chief's approval as required by the rules of the police department, which presumably had the legitimate purpose of ensuring that Irondale was not without police protection.

The council's disciplinary action against King arose from a different context. Very early on April 24, 1977, King was on duty with supervisory responsibilities over the other policemen. At about 1:00 a.m., King received a radio call from a subordinate, Boartfield, reporting that he was pursuing a traffic violator within the city limits. Soon Boartfield called King again, informing him that he was still in pursuit and reporting his location, which was now outside the city limits. King notified the next police department that Boartfield was chasing a car toward their jurisdiction and asked for assistance. King did not advise Boartfield to stay within the police jurisdiction, the city limits. In his chase beyond the police jurisdiction, Boartfield wrecked the patrol car. The unambiguous policy of the Irondale Police Department in effect at that time was:

To apprehend a minor traffic violator, the officer is *not* to chase the violator outside the police jurisdiction.

Record at 113.

Based on these facts, the Irondale City Council found that Sergeant King had failed to properly supervise his subordinate and that Officer Ramsey had failed to follow departmental rules regarding meetings.

The council accordingly unanimously voted in favor of Chief McSween's recommendations that they be demoted.

*The Case Below—Deprivation of Constitutional Rights*

Appellants filed this suit contending that they were deprived of rights guaranteed under the Constitution of the United States because they were demoted for engaging in unionization of the Irondale Police Department. They contended that the stated reasons for their respective demotions were merely pretextual, and that they did not commit the acts nor omit the duties which were made the basis of their demotions.

On appellees' motion for summary judgment, the district court reviewed the depositions, affidavits, briefs, and arguments of the parties. In the memorandum opinion of January 10, 1980, the district court concluded, "[t]he undisputed facts before the court demonstrate that the council acted April 26, 1977 on Chief McSween's recommendations for the demotions." Record at 122. The court noted that the depositions of both appellants and the other evidence in the file confirmed the misconduct of Ramsey and King which served as the grounds for their demotions. Although Ramsey and King had alleged that they believed their demotions were due to anti-union animus, they failed to present the district court with any evidence in support of those contentions. The court concluded, "The verified material before the court is completely lacking of other affidavits or exhibits submitted by plaintiffs evidencing impropriety on the part of the council in exercising its duty to discipline the police force when violations occur." Record at 123.

The court further noted that appellants had failed to submit any evidence in support of their contention that they were the subjects of continuing harassment because of their union activities. Finally, the district court concluded that the appellees' refusal to recognize the union did not give rise to an actionable claim since public employers are not required to recognize a union attempting to represent public employees. The court thus held that there was no

genuine issue as to any material fact and that appellees were entitled to judgment as a matter of law.

## The First Appeal

Appellants appealed the grant of summary judgment, which this court summarily affirmed. While this court was considering the case, however, the parties agreed that the order appealed from was not appealable because appellees had an outstanding counterclaim for malicious prosecution. On petition for rehearing, this court was informed of the lack of jurisdiction. This court vacated the summary affirmance and dismissed the appeal.

## The Case Below—Counterclaims for Malicious Prosecution and Abuse of Process

The district court accordingly reviewed appellees' counterclaim. After additional briefing by the parties, the district court entered an order clarifying that the counterclaim was based on two distinct claims: (1) a malicious prosecution claim alleged to arise from the institution of an earlier action which was voluntarily dismissed by plaintiffs, and (2) an abuse of process claim connected with the present action. The court granted summary judgment in appellants' favor on both issues. The court concluded that the voluntary dismissal of the original action by appellants did not "satisfy as a matter of law the element of termination in a party's favor which is necessary to support an action for malicious prosecution." Record at 185. Because the instant action was identical to the original action, simply filed in a different forum, the court reasoned that the original action was still being pursued and appellees would have ample opportunity to challenge appellants' conduct if the district court's judgment in favor of appellees was affirmed.

The court found no basis in Alabama law for the abuse of process claim under the facts of this case. In Alabama, the court

noted, an abuse of process claim is proper only when the action results in the issuance of some form of special process from the court, such as a writ of garnishment. A routine summons is an insufficient basis for an abuse of process claim.

## Our Review

In our review of dismissals of actions on summary judgment, we must determine whether the district court was correct both in concluding that there was no genuine issue as to any material fact and in his ruling as a matter of law. This is the test applied to the two issues on appeal: (1) whether Ramsey and King were demoted, without just cause, for their union activities in violation of their constitutional rights, and (2) whether Leath, Chandler and Daly have a valid claim for malicious prosecution or abuse of process. In the instant case, our review has entailed thorough consideration of the evidence before the district court. We conclude that the district court was correct in granting summary judgment on all claims.

### A. Claims of Ramsey and King

Just cause for disciplinary action against an employee is not eradicated because of pro-union activity by the employee or anti-union sentiment by the employer. *TRW, Inc. v. NLRB,* 654 F.2d 307, 312 (5th Cir.1981), citing *N.L.R.B. v. Mueller Brass Co.,* 509 F.2d 704, 711 (5th Cir.1975). That union activities precede their discipline does not lead to an inference that they were disciplined for those activities. Such an unlawful purpose is not to be lightly inferred. *TRW,* 654 F.2d at 312. Ramsey and King admitted and documented their failure to follow rules of the Irondale Police Department. The council thus had just cause for its vote, on Chief McSween's recommendation, to demote Ramsey and King.[2] Appellants argue that the appellees

---

2. Although the district court did not reach the issue, we note that the evidence indicates that summary judgment could have been granted on the alternate ground of immunity. Leath, Chandler and Daly voted for the demotions in good faith, based on the reasonable grounds

asserted in Chief McSween's recommendation. Thus, the mayor and councilmen would not be liable even if Chief McSween's assertions were inaccurate. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Hernan-*

**1170**

were motivated by anti-union animus. However, they failed to present the district court with any evidence beyond their subjective beliefs, which alone did not constitute a material issue. Accordingly, the district court's decision granting summary judgment in favor of appellees on this issue is affirmed.

### B. *Counterclaims of Leath, Chandler and Daly*

■ A review of Alabama law and the law of this court mandates our affirmance of the district court's ruling on appellees' counterclaims for abuse of process and malicious prosecution. As Judge Tuttle stated in *Ancora Corporation v. Stein:*

> We are not convinced that the counterclaim sets out a clear case of abuse of process, as recognized under the Alabama decisions. These cases seem to hold that for such an action to be sustained, the complaint must allege that the action causing damages to the plaintiff must allege that a suit had been legally filed for a proper purpose, but that, once filed, the process of the court, such as a writ of attachment or the like, had been improperly used. In other words, the Alabama courts appear not to have recognized, as the basis of an abuse of process suit an allegation that the suit was originated out of an improper motive and solely for the purpose of harassment of the complaining party.

*Ancora Corporation v. Stein,* 445 F.2d 431, 433 (5th Cir.1971). Because no special process was improperly issued in the instant case, we agree with the district court that there is no basis for an abuse of process claim.

The district court next considered the claim for malicious prosecution based on the first action filed, which was voluntarily dismissed for refiling in another forum. The court held that was an insufficient "termination in favor" of appellees to permit them to bring a malicious prosecution claim at

*dez v. City of Lafayette,* 643 F.2d 1188 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct.

this time under the specific facts of this case. The court reasoned that the instant action, identical to the former, would provide the basis for a malicious prosecution suit if the instant action ultimately terminates in defendants' favor.

Appellees urge that we apply the same standard for "termination in favor of a plaintiff" as was applied by an Alabama court in an action for malicious criminal prosecution in *Kroger Company v. Puckett,* Ala.Civ.App., 351 So.2d 582 (1977). In *Kroger,* the defendant had been accused of shoplifting. In the course of the trial, the case was dismissed because of a fatal variance between the indictment and proof at trial. Defendant subsequently brought a malicious prosecution claim. The court held that the dismissal of the prior action constituted a termination in favor of the accused shoplifter. In affirming the trial court's action, the appellate court emphasized in assessing the termination of a criminal prosecution for purposes of a subsequent malicious prosecution claim:

> It is enough that the proceeding is terminated in such a manner that it cannot be revived and the prosecutor, if he proceeds further, will be put to a new prosecution.

351 So.2d at 585–86.

■ We do not agree with appellees that *Kroger* should control this case. First, we do not find that the present case falls within the language of terminations "in such a manner that it cannot be revived." More important, we find inherent distinctions between terminations of criminal and civil actions. We are guided by the following language, from the Restatement (Second) of Torts, concerning civil terminations:

> Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought ... depends upon the circumstances under which the proceedings are withdrawn.

1251, 71 L.Ed.2d 444 (1982).

Restatement, Second, Torts sec. 674. The district court followed this principle, evaluated the unique circumstances under which the initial action was withdrawn, and concluded that there was no basis for a malicious prosecution claim. We agree with the reasoning of the district court that where the initial complaint was withdrawn solely to be filed in another forum and where the complaint was promptly filed in that new forum, the withdrawal of the initial complaint does not constitute a termination in favor of the initial defendants for purposes of a malicious prosecution action.

▮ In their brief, appellees have urged this court to look beyond the limitations of Alabama actions for abuse of process and malicious prosecution and find that appellees' complaint stated some analogous tort. For this proposition, appellees cite *Ancora Corporation v. Stein*, 445 F.2d 431 (5th Cir. 1971). The facts of the present case are easily distinguishable from *Ancora*. In *Ancora*, the counterclaim stated, "[defendant's] claim is one essentially charging plaintiffs with tortious interference with business relations." 445 F.2d at 434. The *Ancora* district court had refused to allow the filing of the counterclaim, finding that it failed to state a cause of action for abuse of process. The appellate court reversed, pointing out that the counterclaim had not specified abuse of process as the theory of recovery and that the counterclaim was founded on a broader basis, which might permit recovery. In the present case, the district court permitted briefing by appellees to clarify the premise of their counterclaim. They specified that there were two components: abuse of process and malicious prosecution. Appellees presented neither additional theories of law nor additional facts which would support any other analogous tort action in the district court. Accordingly, we will not consider such new tort counterclaims on appeal.

The decisions of the district court are AFFIRMED.