BLUE DOLPHIN, INC., a Virgin Island Corporation and Sharon Locke Gidding, as personal representative of the Estate of Steven Jess Gidding, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 83–2200–CIV.

United States District Court, S.D. Florida.

Feb. 13, 1987.

Michael Halpern, Key West, Fla., for plaintiffs.

H. Ray Allen, Francis H. Muldoon, Jr., Michael Halpern, Irving Pianin, Alan Mishael, Asst. U.S. Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD B. DAVIS, District Judge.

THIS CAUSE was heard by the Court in Key West, Florida. Considerable testimony was adduced and numerous exhibits received into evidence. After considering the foregoing and upon review of the entire record in this matter, the Court hereby renders its Findings of Fact and Conclusions of Law.

### PREFACE

The Court is cognizant that there exists a serious question as to whether certain of Plaintiffs' claims come within the purview of the Court's jurisdiction. Assuming, *arguendo*, that this matter is properly before this Court and that no jurisdictional defects bar the Court's consideration of the merits, for the reasons stated below, Plaintiffs' claims against the United States must fail.

### FINDINGS OF FACT

1. The events and circumstances giving rise to this litigation are those of the Mariel Boatlift of 1980. During the course of this occurrence some 114,000 Cuban aliens came to Key West in approximately 1,800 boats.

2. The vessel which is the subject of this litigation, BLUE DOLPHIN, was among the hundreds of vessels comprising the Flotilla. It arrived in Key West with 129 undocumented Cuban aliens on May 22, 1980.

3. The master or captain of the BLUE DOLPHIN upon its arrival at Key West was Stephen J. Gidding.

4. Mr. Gidding was served with NOTICE OF INTENT TO FINE for violations of 8 U.S.C. Sections 1321, 1323 and 1324. Thereafter, the vessel was seized by the U.S. Customs Service.

5. The vessel remained under actual seizure, in the custody of the Customs Service, until July 15, 1980 at which time Mr.

Gidding regained physical possession of the BLUE DOLPHIN under a mutual agreement of constructive seizure.

6. On July 17, 1980, Mr. Gidding came to the Annex to retrieve the BLUE DOLPHIN pursuant to a constructive seizure agreement.

7. At that time Mr. Gidding learned of all damages, if any, to the BLUE DOLPHIN while in the custody of the United States.

8. After July 17, 1980, when Mr. Gidding took possession of the BLUE DOLPHIN, the sole responsibility for care and maintenance resided with him.

9. Any and all damage to the Blue Dolphin possibly occurring while in the custody of the United States, was known of by Mr. Gidding not later than July 17, 1980. This lawsuit was commenced on September 1, 1983.

## CONCLUSIONS OF LAW

Based on the foregoing facts and the applicable rules of law, the Court makes the following conclusions of law:

1. Plaintiffs' filed this action on September 1, 1983, seeking recovery of monetary damages against the United States of America. Essentially, Plaintiffs' claims related to the detention of and damage to a vessel, BLUE DOLPHIN, by the United States Customs Service. Specifically, the Amended Complaint states two counts against the United States. First, Plaintiffs allege that while in the custody of the United States, the BLUE DOLPHIN incurred damage as a result of negligent care. Second, the United States is alleged to have wrongfully arrested the vessel and abused process by failing to release the vessel upon Plaintiffs' showing of evidence pursuant to a petition for remission.

2. Plaintiffs allege jurisdiction under the Suits in Admiralty Act, 46 U.S.C. Sections 741 *et seq.* (hereinafter cited as "SAA"), or alternatively under the Federal Tort Claims Act, 28 U.S.C. Section 1346 (FTCA).

3. Plaintiffs' claims, except the contentions of abuse of process (rooted in land), lie exclusively under the SAA, since damages are sought against the United States for an alleged tortious detention of and injury to their vessel. *Walsh Transportation Co. v. Iroquois Transit Corporation,* 16 F.2d 475 (S.D.N.Y.1926). *See generally, Philadelphia National Bank v. United States,* 411 F.2d 747 (5th Cir.1969). Clearly, such claims are within the admiralty jurisdiction of the federal courts.

4. Accordingly, the Court concludes that all of plaintiffs' claims, except that for abuse of process, must be brought in strict compliance with the SAA and not otherwise.

5. The claim for abuse of process, however, must be brought under the FTCA since the abuse of process complained of—namely, failing to favorably act to release plaintiffs' vessel—occurred ashore and does not meet the prerequisite nexus test established in *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

6. Under the SAA, suit "may be brought only within two years after the cause of action arises." 46 U.S.C. Section 745. *See T.J. Falgout Boats, Inc. v. United States,* 508 F.2d 855 (9th Cir.1971), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975); *Philadelphia Nat'l. Bank v. United States,* 411 F.2d 747 (5th Cir.1969); *States Marine Corp. of Del. v. United States,* 283 F.2d 776 (2d Cir.1960).

7. A cause of action for property damage arises on the date the damage is done. *Philadelphia Nat'l. Bank, supra,* 411 F.2d at 748; *see generally* Prosser, *Law of Torts,* at 144–45 (4th ed. 1971).

8. Plaintiffs' Complaint alleges that on or about July 17, 1980, the BLUE DOLPHIN was released from the Truman Annex Harbor and placed in Mr. Gidding's physical possession, but under the constructive seizure of the U.S. Customs Service. The Complaint acknowledges that on July 16, 1980, Mr. Gidding arrived at the Annex and, at that time, was made aware of the damage to the vessel, BLUE DOLPHIN.

9. Plaintiffs do not contest that under the SAA suit must be brought within two years after the cause of action arises. It is plaintiffs' position, however, that their cause of action did not arise until March 9, 1983.

10. On July 17, the BLUE DOLPHIN was released from the Annex and placed in Mr. Gidding's physical possession. Two days earlier, Mr. Gidding entered into an agreement with the U.S. Customs Service for the constructive release of his vessel. Under this agreement, Mr. Gidding was to maintain and safeguard the vessel, not the Customs Service. As of July 17, 1980 plaintiffs could have alleged all elements of this admiralty tort. Suit was not filed until over three years later.

11. To refute the government's limitations argument, Plaintiffs first contend that the date on which their cause of action accrued was March 9, 1983, because the damage incurred was "of a continual nature."

■ 12. The Court concludes, however, that the statute of limitations began to run on July 17, 1980, the date on which Plaintiffs could have asserted their legal remedy. The so called doctrine of "continued wrongful acts," is not triggered by subsequent damage, but only by repeated wrongs:

> The general rule that the period of limitation for suit for damages in tort runs from the date of the initial injury is subject to modification where the wrongful act is shown to be continuing or repeated. In this situation, where separate and successive actions would lie for the damages as they accrue, the statute of limitations as to such successive actions does not run from the date of the first wrong suffered, but from the successive dates of the accrual of such damages.

35 Fla.Jur.2d, Limitation and Latches Section 49.

13. Plaintiffs could not have brought seperate and successive actions in the instant case. Thus, the doctrine of continued wrongful acts having no applicability to the issues herein, Plaintiffs' cause of action accrued, at the latest, on July 17, 1980.

14. The Court rejects Plaintiffs' argument that their cause of action for tort damages is not time-barred since the vessel remained under "constructive seizure" and therefore their claims did not accrue until full and complete release of the vessel. Plaintiffs' logic leads to the result that there would exist no remedy whatsoever were the United States to seize and never return an owner's vessel.

15. In the alternative, Plaintiffs' final argument is that the SAA statute of limitation is tolled under the facts of this case. Here, Plaintiffs' have presented no facts which justify tolling the statute.

16. Therefore, the Court concludes that Plaintiffs' admiralty claims are time barred.

■ 17. Plaintiffs' claim for abuse of process is without merit. An abuse of process claim is proper only when the action results in issuance of some form of process from the *Court*, such as a writ of garnishment. *See, e.g., Ramsey v. Leath*, 706 F.2d 1166 (11th Cir.1983). As a threshold matter there must be some allegation that *after* suit has been legally filed, the process of the Court had been improperly used. *Ancora Corporation v. Stein*, 445 F.2d 431, 433 (5th Cir.1971). Plaintiffs have neither alleged nor proven any perversion of this Court's judicial process. Furthermore, Plaintiffs have failed to show any improper purpose nor willful act in use of process not proper in the regular conduct of the instant proceedings. The Court concludes that the United States is not liable for the claim based upon abuse of process.

For the reasons set forth hereinabove, it is

ORDERED AND ADJUDGED that Judgment is hereby GRANTED in favor of the Defendant, United States. Defendant shall have ten days to submit its proposed Final Judgment.