ALMON, Justice.
Laymon Hughes brought this action for malicious prosecution and abuse of process against Alba-Waldensian, Inc., Texelastic Corporation, and Pharr Yarns, Inc. (“the yarn companies”). The yarn companies filed a counterclaim for an amount due on a note. The trial court entered summary judgment for the yarn companies on the complaint, tried the counterclaim before a jury, and entered judgment on the jury verdict awarding $26,212.40 to the yarn companies and $3,931.86 in attorney fees. Hughes’s argument is that when the yarn companies, as assignees, brought a prior suit on the same note as is now the subject of the counterclaim, they knew that there had been an accord and satisfaction between him and the payee on the note.
The trial court set forth the following as uncontroverted facts in its order granting summary judgment on the complaint:
“(1) Laymon Hughes executed a promissory note to Joe D. Gregory, owner of Guffey Hosiery Mills, in the amount of $49,000.00 payable in monthly installments of not less than $600 beginning February 1, 1980.
“(2) In settlement of a lawsuit filed by Alba-Waldensian, Texelastic, and Pharr against Gregory, Gregory assigned certain proceeds of the Hughes note to Alba-Waldensian, Texelastic, Pharr, and an intervenor, NCNB Financial Services, Inc., this settlement agreement having been executed by the parties thereto and approved by the court on December 13, 1982.
“(3) Counsel for one of the assignees wrote Hughes on December 13, 1982, notifying him of the assignment and that payments should be made in accordance therewith.
“(4) Hughes made no payment to the assignees, defendants in the present action, and they filed suit against Hughes in June 1983 contending that Hughes was in default under the terms of the note.
“(5) Hughes made a payment on Gregory’s behalf to Central Bank in February 1983 in the amount of $15,062.11 and *510 claims credit therefor on his indebtedness under the Gregory note. The assignees of the note had no knowledge of this payment at the time it was made, but were aware of it at the time suit was filed against Hughes.
“(6) Hughes signed a document in connection with the payment to Central Bank that he would ‘settle with the four yarn companies represented by Gillis and Watson and Charles McGee and Joe Gregory will mark fully paid and satisfied the Note and Security Agreement from Hughes to Gregory.’ No settlement was made.”
The yarn companies had moved for a voluntary dismissal of their action against Hughes, and the trial court had dismissed that action. It is on those proceedings that Hughes now attempts to base his claims. The court concluded:
“From these uncontroverted facts, the court finds as a matter of law that probable cause existed for the institution of the suit against Hughes in June 1983 by Alba-Waldensian, Texelastic, and Pharr.
“Moreover, the court finds no evidence to support a finding that the suit was instituted with malice. It follows that the plaintiff cannot prevail on his claim for malicious prosecution.
“Likewise, the plaintiffs claim based on abuse of process is also fatally defective in that the plaintiff has failed to show the issuance of some form of special process from the court. A routine summons is insufficient basis for a claim of abuse of process. Ramsey v. Leath, 706 F.2d 1166 (11th Cir.1983).”
Hughes takes issue with the facts recited in paragraph (3), above, saying that he never received any such notice and asserting that the exhibit indicating such notification, a letter introduced into evidence by the yam companies, does not give his correct mailing address. This is immaterial, because the evidence shows that, whether or not Hughes received the December 13, 1982, notification, he was clearly aware of the settlement agreement entered into on February 21, 1983, between Gregory and the yam companies and NCNB, before he attempted to extinguish the debt by paying Central Bank. The document, referred to in paragraph (6), and executed in connection with that payment, reads:
“Memorandum
“Laymon Hughes will pay to Central Bank FIFTEEN THOUSAND SIXTY-TWO DOLLARS AND ELEVEN CENTS ($15,062.11), and Central Bank will satisfy Joe Gregory’s Mortgage or allow him to redeem it at that net figure of $15,-062.11.
“Hughes will settle with the four [sic] yam companies represented by Gillis and Watson and Charles McGee and Joe Gregory will mark fully paid and satisfied the Note and Security Agreement from Hughes to Gregory.
[[Image here]]
“This agreement is conditioned upon the approval of Charles McGee and a settlement by the yam companies of attorneys’ fees due Gillis and Watson.”
Prior to the settlement with the yam companies and NCNB, Gregory had transferred half of his interest in the note to his lawyer, Charles McGee. This explains the language in the memorandum regarding McGee’s approval of the agreement and his marking the note paid. No issue as to McGee’s rights in the note is presented here.
Hughes argues that his payment to Central Bank constituted settlement of his debt to Gregory, with Gregory agreeing to accept the $15,062.11 as 40% of $37,655, and that the latter amount, together with $4,416 that he agreed to and did pay NCNB, represented the balance then due on the note.
The trial court correctly pointed out to Hughes's attorney and instructed the jury, however, that the question of whether Hughes could have settled the note with Gregory by a partial payment was dependent upon whether he had notice of Gregory’s assignment of the majority of his interest in the note to the yam companies and NCNB. See Federal Land Bank of New Orleans v. Corinth Bank & Trust Co., 214 Ala. 146,107 So. 88 (1926); Barbour & Son v. Washington Fire & Marine Insurance *511 Co., 60 Ala. 433 (1877). The $26,212.40 awarded by the jury was the amount due to the yam companies under their settlement with Gregory, and was considerably less than the amount of principal and interest due on the note at the time of trial, even if the payment to Central Bank was credited as a payment on the note. The jury, by its verdict, necessarily found that Hughes was aware of Gregory’s assignment and, so, was not authorized to settle with him without consulting the yarn companies and NCNB. Indeed, the memorandum executed in connection with the payment to Central Bank reflects that Hughes was to settle with the yam companies; the evidence showed that he attempted to do so, but that they were not willing to further reduce the payment due them (their settlement with Gregory was for 40% of his debt); and he did in fact pay NCNB. Thus, the jury was authorized to reject Hughes’s defense of satisfaction and the court did not err in entering judgment on the verdict on the counterclaim.
From what has been said, it is clear that the court did not err in granting summary judgment on the malicious prosecution and abuse of process claims. Not only was the court correct in holding that the yarn companies had demonstrated that there was no genuine issue as to the facts that they had had probable cause to bring the prior action and that they had instituted it without malice, but also it is clear that the dismissal of the prior action was without prejudice, so that a third element of malicious prosecution, termination of the prior action in favor of Hughes, is absent. The prior dismissal was not a termination in favor of Hughes within the import of malicious prosecution, because it was without prejudice, leaving the yam companies the option of refiling the same action. It is clear that the court intended the dismissal to be without prejudice from the face of the orders of dismissal and from the fact that the court submitted the counterclaim, which was an identical suit on the same note, to the jury, which returned a verdict against Hughes. Indeed, the ultimate resolution of the claim made the subject of this malicious prosecution action was against Hughes, not in his favor. Furthermore, Hughes’s claim that he considered the dismissal to have been with prejudice is undermined by the fact that he did not raise res judicata as a defense to the counterclaim. See Brown v. Parnell, 386 So.2d 1137 (Ala.1980); Gosnell v. Slaughter, 364 So.2d 1158 (Ala. 1978); Jordan v. Empiregas, Inc. of Belle Mina, 337 So.2d 732 (Ala.1976); Ramsey v. Leath, 706 F.2d 1166 (11th Cir.1983).
Hughes attempts to state a multiplicity of issues, but the above discussion is sufficient to show that the trial court committed no error and that its judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.