**NAL II, LTD., Plaintiff,**

v.

**Joel L. TONKIN, Defendant.**

**Civ. A. No. 88–2449–S.**

United States District Court,
D. Kansas.

Jan. 30, 1989.

David L. Skidgel, Rosemary Podrebarac, McAnany, Van Cleave & Phillips, Kansas City, Kan., for plaintiff.

Robert P. Numrich, Field, Gentry, Benjamin & Robertson, P.C., Overland Park, Kan., William G. Beck, Field, Gentry, Benjamin & Robertson, P.C., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiff's motion to dismiss Counts II and III of defendant's counterclaims, and defendant's motion to join an additional party. This suit involves the two sole partners of Rylemead Development Company, L.P., a Kansas limited partnership. Plaintiff NAL II, LTD. ("NAL II"), the limited partner, brought this action seeking an accounting from the defendant, dissolution of the partnership, and a rescission of a letter of authority granted to defendant. Defendant Joel Tonkin ("Tonkin"), in his answer to plaintiff's complaint, made three counterclaims. The second counterclaim seeks damages under a theory of malicious prosecution of a civil proceeding. The third counterclaim seeks damages because of fraud. Defendant also seeks punitive damages on these counterclaims.

## PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S SECOND AND THIRD COUNTERCLAIMS

The court may not dismiss a cause of action for failure to state a claim unless it appears beyond doubt that the complainant can prove no set of facts in support of the theory of recovery that would entitle him to relief. *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Mangels v. Pena,* 789 F.2d 836, 837 (10th Cir.1986). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The court must view all reasonable inferences in favor of the complainant and the pleadings must be liberally construed. *Id.* The issue in reviewing the sufficiency of a complaint is not whether the complainant will ultimately prevail, but whether the complainant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### A. The Malicious Prosecution of Civil Proceedings Counterclaim.

The case law is well settled that to maintain an action for malicious prosecution of a civil action, the complainant must prove the following elements: (1) that the defendant initiated, continued, or procured civil procedures against the complainant; (2) that the defendant in so doing acted without probable cause; (3) that the defendant acted with malice, that he acted primarily for a purpose other than that of securing the proper adjudication of the claim on which the proceedings are based; (4) that the proceeding terminated in favor of the complainant; and (5) that the complainant sustained damages. *Nelson v. Miller,* 227 Kan. 271, 276, 607 P.2d 438, 443 (1980).

The facts as presented in Tonkin's counterclaim are as follows. On June 23, 1988, NAL II initiated and continued a civil proceeding in the district court of Johnson County against Tonkin. NAL II requested and was granted an *ex parte* temporary restraining order, restraining Tonkin from

continuing any action as a general partner of Rylemead. On August 9, 1988, a hearing was held in the state court. The judge determined that the temporary restraining order should not have been granted, and dissolved it. Thereafter, plaintiff dismissed the state court action without prejudice. On August 31, 1988, NAL II filed the present suit in federal court. NAL II attempted to have this court issue a temporary restraining order against Tonkin, but this court denied the request, *see* Memorandum and Order dated September 6, 1988.

The issue presented in this motion is whether there has been a final termination of a previous civil proceeding in Tonkin's favor, the fourth element of a malicious prosecution claim. Tonkin contends that NAL II's voluntary dismissal of the state court action is a termination of a previous civil proceeding in his favor. NAL II contends, and Tonkin does not dispute, that the complaint filed in federal court is practically a verbatim copy of the petition filed in the state court proceeding. NAL II contends that the filing of this action in federal court constituted a recommencement of the action originally brought in state court. Thus, the original proceeding is not yet terminated, and is still pending in the present suit. Therefore, NAL II argues Tonkin's malicious prosecution of a civil action counterclaim is premature.

A civil proceeding may be terminated in favor of a defending party by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of a failure to prosecute them. *Nelson v. Miller*, 227 Kan. at 280, 607 P.2d at 445. Whether a withdrawal constitutes a final termination of the case in favor of the person against whom the proceedings are brought depends on the circumstances under which the proceedings are withdrawn. *Id.* (citing Restatement Second of Torts § 674, Comment J.). However, a dismissal of the previous action is a sufficient termination in favor of the defending party, "if the action has not been commenced again." *Id.* at 281, 607 P.2d at 446 (quoting *Marbourg v. Smith*, 11 Kan. 554, 556 (1873)).

Now, the court must determine whether a filing of an almost identical suit in federal court constitutes a recommencement of an earlier filed but dismissed state suit for the purposes of a malicious prosecution claim. After thorough research, the court has found no federal or state case law dealing with this specific situation. NAL II relies on an eleventh circuit decision, *Ramsey v. Leath*, 706 F.2d 1166 (11th Cir. 1983). The eleventh circuit held that when a state suit is removed to federal court, the state suit is not considered terminated for the purposes of a malicious prosecution action. Unlike that situation, however, the present suit was not removed to federal court. In the present case, the state suit was dismissed and then, later, a similar complaint was filed in federal court. Thus, *Ramsey* offers little help in resolving this issue.

A case involving some facts akin to the present case is *Bercy Indus., Inc. v. Mechanical Mirror Works, Inc.*, 279 F.Supp. 428 (S.D.N.Y.1968). In *Bercy Indus.*, plaintiff sought and obtained a temporary restraining order. After defendants incurred some loss because of the order, the district court denied plaintiff's motion for a preliminary injunction and dissolved the temporary restraining order. The defendants asserted counterclaims for malicious prosecution. The court dismissed those counterclaims, finding the claims premature. *Id.* at 429. The claims for malicious prosecution could not be maintained until the underlying suit was terminated in defendants' favor. *Id.* The temporary restraining order hearing did not provide a separate proceeding on which to base a malicious prosecution claim.

*Bercy Indus.* is still not dispositive of the present suit. In *Bercy Indus.*, the temporary restraining order hearing was an earlier stage of the same suit in which the malicious counterclaims were asserted. Unlike that case, in the present case, the temporary restraining order was issued in a state court proceeding that was later dismissed. The malicious prosecution counterclaim, which is based on this earlier state proceeding, is asserted in the present

federal action. Although to some extent *Bercy Indus.* involved a situation similar to the one before this court, the procedural history of the New York case was much different than the proceedings that have occurred in the present case. (There was no previous state court action in *Bercy Indus.*)

The only case found that even appears to be analogous to the present situation is a 1888 Kansas Supreme Court case, *Schippel v. Norton*, 38 Kan. 567, 16 P. 804 (1888). In that case, a criminal prosecution was commenced against Norton before a justice of the peace. A week later the proceeding was dismissed. On the same day, a new proceeding was commenced in district court against Norton for the same offense. Norton brought a malicious prosecution action based on the proceeding before the justice of the peace. The Kansas Supreme Court held that Norton could not maintain a malicious prosecution action when substantially the same proceeding as the one on which he based his action was still in the courts. *Id.* at 572, 16 P. 804. The court stated:

> If the criminal prosecution in the present case had been dismissed with no intention of commencing it again in the district court *or elsewhere,* or if the delay had been made in commencing the criminal prosecution again, so as to lead the plaintiff to believe that the criminal prosecution had been finally terminated, and if he had then, and at once, commenced his action for malicious prosecution, he might probably maintain the same.

*Id.* at 571–72, 16 P. 804 (emphasis added).

The reasoning of the *Schippel* decision is applicable to the present case. *See Nelson v. Miller*, 227 Kan. at 275, 607 P.2d at 442 ("The elements necessary to maintain an action for malicious prosecution of a civil action are the same as those required to sustain an action for malicious prosecution of a criminal action.") (citations omitted). Here, the initial state action was dismissed, but was commenced again elsewhere—federal court. Therefore, the dismissed state action has been recommenced. Although the court is relying on century-old authority, the Kansas Supreme Court recently in-

dicated that this early generation of case law is still valid law regarding malicious prosecution. *See Nelson v. Miller*, 227 Kan. at 280, 607 P.2d at 446 (quoting extensively from *Marbourg*, 11 Kan. 554 (1873)). *Nelson v. Miller*, 227 Kan. at 276, 607 P.2d at 443 (citing *Malone v. Murphy*, 2 Kan. 250 (1864)). Moreover, the Kansas Supreme Court in *Nelson* cited *Schippel* with approval. *Nelson v. Miller*, 227 Kan. at 282, 607 P.2d at 447.

Since the initial state action has been recommenced by this present federal action, the state action cannot be considered to have terminated in Tonkin's favor. Therefore, Tonkin's malicious prosecution of a civil action counterclaim is premature. Thus, the court will grant NAL II's motion to dismiss Tonkin's second counterclaim.

**B.** *The Fraud Counterclaim.*

█ NAL II argues that Tonkin's third counterclaim should be dismissed for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure. NAL II contends that Tonkin has failed to assert the time, place or content of the alleged false representation, the identity of the person making the representation, or what was obtained or given up thereby. NAL II argues that since Tonkin did not plead his fraud claim with particularity, the third counterclaim is insufficient and therefore should be dismissed for failure to state a claim. Tonkin contends that the counterclaim is sufficiently particular to give defendant notice of the alleged fraudulent conduct.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of Rule 9(b) is to enable a defending party to prepare an effective response to charges of fraud and to protect the defending party from unfounded charges of wrongdoing which might injure its reputation and goodwill. *N.L. Indus., Inc. v. Gulf & Western Indus., Inc.*, 650 F.Supp. 1115, 1129–30 (D.Kan.1986). However, Rule 9(b) must be read in light of the provisions of Rule 8 for notice pleading. *See Seattle First Nation-*

*al Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986); *N.L. Indus., Inc.,* 650 F.Supp. at 1130. The balance that must be struck between Rule 8 and Rule 9(b), then, is that complainant must set out the "who, what, where, and when" of the alleged fraud. *Wichita Federal Savings & Loan Assoc. v. Landmark Group,* 657 F.Supp. 1182, 1188 (D.Kan.1987).

In the present case, Tonkin has failed to strike this balance in structuring his third counterclaim against NAL II. Tonkin has failed to identify who made the alleged fraudulent statement. Tonkin has failed to specify to whom the statement was made. Also, the counterclaim does not clearly spell out the content of what was said in the fraudulent statement. Thus, the third counterclaim fails to meet the requirements of Rule 9(b).

However, the court will not dismiss the third counterclaim. Insufficient allegations of fraud are subject to the liberal amendment provisions of Rule 15 of the Federal Rules of Civil Procedure. *N.L. Indus., Inc.,* 650 F.Supp. at 1130. The courts in this district freely grant leave to amend rather than dismiss the complaint in cases such as this. *See id.; Meyer v. Cloud County Bank & Trust,* 647 F.Supp. 974, 976 (D.Kan.1986). Thus, Tonkin will be allowed to amend his third counterclaim to conform with the requirements of Rule 9(b).

### C. Pleading Punitive Damages.

Finally, on the assumption that Tonkin will amend his third counterclaim to conform with Rule 9(b), the court will address NAL II's argument that Tonkin failed to properly plead punitive damages in light of recently enacted Kansas legislation. The 1988 Kansas Legislature passed a law regarding the pleading of punitive damages. The new statute states:

> No tort claim for punitive damages shall be included in a petition or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive dam-ages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim pursuant to K.S.A. 60–209, and amendments thereto. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed on or before the date of the pretrial conference held in the matter.

1988 Kan.Sess.Laws, Ch. 209, New Sec. 4. The law has not been interpreted by either Kansas appellate courts. However, for the purposes of this motion, the court will accept NAL II's explanation of the new law's requirements. According to NAL II, the new law requires a party seeking punitive damages to demonstrate their basis for the punitive damage claim to the court and allows the opposing party an opportunity to dispute this basis. Then, the court would determine whether the claim is merited.

NAL II argues that this new law has substantive overtones. Thus, under the *Erie* doctrine, this court must apply the new law to Tonkin's third counterclaim seeking punitive damages. NAL II argues that the law is substantive in nature because it grants a party the opportunity to defend against unwarranted claims. Alternatively, if the law is found to be procedural in nature, NAL II argues that the new law still should apply to prevent an inequitable administration of the laws in this diversity case.

In response, defendant Tonkin argues that the new Kansas law became effective after the present action was commenced. Furthermore, Tonkin argues that federal courts in diversity cases apply federal procedural rules, not state procedural rules. Tonkin contends that the new law affects no substantive rights and that no inequitable administration of law will result from not applying the new statute. Also, Tonkin argues that the new law is in direct conflict with Rule 9(g) of the Federal Rules of Civil Procedure, which requires that spe-

cial damages be specifically stated, and does not require the court's prior review of a punitive damage claim's merit.

■ First, the court will address Tonkin's argument that the new Kansas statute became effective after this case was commenced, and therefore it is not effective for this case. A canon of statutory construction in Kansas is that a statute will operate prospectively unless it is indicated that the legislature intended the new law to operate retrospectively. A statute will not be given retrospective application unless the intent of the legislature is unequivocally expressed. This canon is applied when a new statute creates a new liability not existing before, or when a new statute changes the substantive rights of the parties. *Chamberlain v. Schmutz Mfg. Co.,* 532 F.Supp. 588, 589 (D.Kan.1982) (citing numerous Kansas cases).

This canon of construction is modified when the statutory change is merely procedural or remedial in nature and does not affect the substantive rights of the parties. When a change of the law affects only the remedy, or the law of procedure, all rights of action will be enforced under the new procedure without regard to whether they accrued before or after the change of law and without regard to when the suit was commenced. *Chamberlain,* 532 F.Supp. at 589.

The court finds that this new statute is purely procedural and affects only the remedy of punitive damages. The new statute is a change in the state's code of civil procedure. The purpose of the statute is simply to change the procedure by which a party pleads the desired remedy of punitive damages. The reasons for the new law, as presented in NAL II's brief, is to limit the number of punitive claims that may be pleaded, prevent undue delay in deciding whether such claims should be granted, and reducing the time and money spent in litigating an action. These purposes show that the statute is intended to have a procedural effect. The new statute affects the time in a lawsuit when a court determines whether a claim for punitive damages is appropriate. Therefore, the court finds the new statute is procedural in nature and entitled to retroactive effect. Thus, the statute is considered to have been effective when the present suit was commenced.*

■ Next, the court will address Tonkin's argument that this new procedural statute has no application in federal diversity cases. The question presented is whether the new Kansas law requiring court approval before punitive damages may be pleaded should be applied in federal diversity cases. Under the *Erie* doctrine, the general law of the forum state is to be applied in diversity cases. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, the Federal Rules of Civil Procedure generally govern procedural matters in diversity cases. *See Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). Regardless of this court's conclusion that the new statute is procedural in nature, the court must determine if it should apply in diversity cases. State procedural rules are applicable in federal diversity cases if an inequitable administration of law would result in not applying them. *See Walker v. Armco Steel Corp.,* 446 U.S. 740, 753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980). Here Tonkin argues that the new Kansas statute is in direct conflict with Rule 9(g) of the Federal Rules of Civil Procedure. If a "direct collision" is found to exist between the federal rule and the state law, the court must apply the analysis set forth in *Hanna, see Walker,* 446 U.S. at 749–50, 100 S.Ct. at 1984–85. Under the *Hanna* analysis, the federal rule, and not the state law, will be applied in diversity cases if: (1) the federal rule directly conflicts with the state law; (2) the federal rule is procedural in nature and is within the scope of the Rules

---

* The court notes that in some circumstances retrospective application of the new law would deprive a party of substantive rights existing before the new law. For example, if the new statute is retroactively applied to a case that has been pre-tried, a party could not move the court to allow its punitive damage claim. Thus, the party would be deprived the right to the remedy. The court believes that in such cases, retrospective application of the new law could not be made without direct instruction from the legislature.

Enabling Act, 28 U.S.C. § 2072; and (3) the federal rule is constitutional. *See Hanna,* 380 U.S. at 471, 85 S.Ct. at 1144, *see also Walker,* 446 U.S. at 748, 100 S.Ct. at 1984. In determining whether there is a conflict between a state law and a federal rule of procedure, the court should not narrowly construe the federal rule in order to avoid a "direct collision" with the state law. *See Walker,* 446 U.S. at 750 n. 9, 100 S.Ct. at 1985 n. 9.

The court first must determine if the new Kansas statute is in direct collision with Rule 9(g) of the Federal Rules of Civil Procedure. Rule 9(g) states that "[w]hen items of special damages are claimed, they shall be specifically stated." This rule requires, in mandatory language, that a claim for punitive damages be set forth in a party's complaint. The court finds a direct collision does exist between this rule and the new state law. The procedure required in the new law, which prohibits the pleading of punitive damages in a party's initial complaint, cannot co-exist with Rule 9(g)'s requirement that such claims be specifically stated in the complaint.

Further support for this conclusion of a direct collision is shown by the fact that K.S.A. 60–209(g) had to be amended with the passage of the new Kansas law. Before the new law, section 60–209(g) stated, in language that closely paralleled the federal rule, that items of special damage were to be specifically stated. The statute further stated that when punitive damages were claimed, the petition should indicate whether the claim was for damages in excess of $10,000 or not. Now, the statute has been amended to reflect that claims for punitive damages are pleaded in an "amended" petition. 1988 Kan.Sess.Law, Ch. 209, Sec. 5. This change was necessary to allow section 60–209(g) to exist in conformity, and not in conflict, with the new statute.

Since a conflict does exist between the new statute and Rule 9(g), the court must apply the *Hanna* analysis. As discussed above, the new statute is purely procedural and affects no substantive rights. Thus, under *Hanna,* the conflicting federal rule

must be applied in diversity cases as long as it is within the scope of the Rules Enabling Act and is constitutional. The court has no problem finding that Rule 9(g) falls within the scope of the Act, for Rule 9(g) concerns the practice and procedure of the federal district courts. *See* 28 U.S.C. § 2072 ("The Supreme Court shall have power to prescribe, by general rules, the form of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States in civil actions."). Furthermore, the necessary and proper clause of the United States Constitution authorizes congressional power to make rules governing the practice and procedure in federal courts. *See Hanna,* 380 U.S. at 472, 85 S.Ct. at 1144. Thus, since the federal rule is procedural, it is also constitutional. Therefore, under the *Hanna* analysis, Rule 9(g)'s requirement must be applied in federal diversity cases. The new Kansas statute prohibiting the pleading of such damages in the initial complaint, and allowing such claims only after the court has found the claims appropriate, has no application in federal diversity cases.

■ Even if no conflict between Rule 9(g) and the new statute existed, the court would still find that the new statute is not applicable in federal diversity cases. If there is no conflict between a federal rule and a state procedural law, the policies behind *Erie* and *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), control the issue of whether the state law should be given effect in a federal diversity case. *Walker,* 446 U.S. at 752, 100 S.Ct. at 1986. The state law is applied in a diversity case if the failure to apply the law would result in an inequitable administration of the law. *Id.* at 753, 100 S.Ct. at 1986. Thus, the state procedural law is applied in a diversity case if the character or result of the litigation would materially differ in absence of the state law's application. *See Hanna,* 380 U.S. at 467, 85 S.Ct. at 1141 ("The *Erie* rule is rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because

the suit had been brought in a federal court.").

The failure of this court to apply the new Kansas statute in the present case would not result in an inequitable administration of the law. Even if the new law is not applied, this court may still determine whether Tonkin's claims for punitive damages are appropriate and justified upon an opposing party's motion for summary judgment or objections to jury instructions on punitive damages. *See Arrocha v. Safeco Ins. Co. of Amer.*, No. 85–2345–S, slip op. at 4 (D.Kan., *unpublished*, Nov. 27, 1985) (dismissing plaintiff's claim for punitive damages); *Bearden v. John Hancock Mutual Life Ins. Co.*, 708 F.Supp. 1196, 1197 (D.Kan.1987) (defendant's motion for partial summary judgment regarding punitive damages granted, because plaintiff offered no evidence that defendant's conduct was malicious, vindictive, or in wanton and willful disregard of plaintiff's rights); *National Polymer Products v. Borg–Warner Corp.*, 660 F.2d 171, 183 (6th Cir.1981) (district court's decision not to instruct jury on issue of punitive damages was proper). The only difference resulting from the state law's application is the time in the life of the lawsuit when the court determines whether the claim for punitive damages is appropriate. This difference is not material to the character or result in the litigation. Thus, the refusal to apply the new statute in federal diversity cases will not result in an unfair administration of law.

## TONKIN'S MOTION TO ADD A THIRD PARTY

█] Defendant Tonkin moves to add an additional party, pursuant to Rules 13(h) and 20 of the Federal Rules of Civil Procedure. Specifically, Tonkin wishes to add Borg–Warner Equities Corporation as an additional defendant to his third counterclaim. The court assumes that Tonkin will continue to assert a claim against Borg–Warner in its more definite statement of the third counterclaim as required in this Memorandum and Order. Plaintiff NAL II opposes Tonkin's motion to add the additional party. NAL II argues that a permissive joinder under Rule 20 is not available to a defendant asserting a counterclaim. NAL II argues that if Tonkin wishes to join a party, he must do so pursuant to Rule 19, and that Borg–Warner is not a necessary party pursuant to Rule 19.

The court finds that permissive joinder under Rule 20 is available to a defendant asserting a counterclaim. The language of Rule 13(h) is clear that persons may be added as parties to a counterclaim "in accordance with the provisions of Rules 19 *and 20*" (emphasis added). Furthermore, the court finds that Tonkin has met the standard required for permissive joinder under Rule 20. In his third counterclaim, Tonkin asserts against both NAL II and Borg–Warner a right to relief arising out of the same transaction, occurrence or series of transactions or occurrences. Also, Tonkin has shown that a question of law or fact common to NAL II and Borg–Warner will arise out of this counterclaim. Therefore, the court will grant defendant Tonkin's motion to add an additional party.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff NAL II's motion to dismiss defendant Tonkin's second counterclaim is granted. IT IS FURTHER ORDERED that plaintiff NAL II's motion to dismiss defendant Tonkin's third counterclaim is denied. However, defendant Tonkin must, within ten (10) days of the date of this order, provide a more definite statement of his third counterclaim. IT IS FURTHER ORDERED that plaintiff NAL II's motion to dismiss defendant Tonkin's counterclaim for punitive damages is denied. IT IS FURTHER ORDERED that defendant Tonkin's motion to join an additional party, namely Borg–Warner Equities Corporation as a counterclaim defendant, is granted.