Maurice FOX, Appellant,

v.

CITY OF WEST PALM BEACH,
Appellee.

No. 23947.

United States Court of Appeals
Fifth Circuit.

Sept. 26, 1967.

**190**

Morris M. Schnitzer, Neward, N. J., Irvin L. Langbein, West Palm Beach, Fla., for appellant.

John M. Farrell, Palm Beach, Fla., John H. Evans, City Atty., West Palm Beach, Fla., Burns, Middleton, Rogers & Farrell, Palm Beach, Fla., for appellee.

Before JONES, GEWIN and SIMPSON, Circuit Judges.

JONES, Circuit Judge:

The appellee, City of West Palm Beach, and the nearby Town of Palm Beach, Florida, had obtained their water supplies from a private utility company. This company, commencing in 1924, used a water catchment area in a marsh west of the City. In 1949 the company constructed earthen dikes on the northern, eastern and southern sides of the portions of the marsh which it owned, leaving the western side, about seven miles

in length, open for the inflow of water. In 1954 the appellant, Maurice Fox, a resident of New Jersey, acquired a tract of land having an Eastern boundary 2¾ miles in length along a part of the un-diked Western boundary of the utility company's catchment area. In 1955 the City acquired the properties of the utility company including the catchment area. In 1963 the City decided to pump water from Lake Okeechobee into its catchment basin to increase its water supply. Before it had started this operation, the appellant brought an action for injunctive relief and money damages. The complaint, which was filed on March 2, 1965, prayed that the City be enjoined from pumping except under such safeguards as would assure appellant from artificial flooding and from interference with natural drainage from appellant's land, and requiring steps to be taken to restore his land to a condition of natural drainage.

On February 1, 1966, the appellant sought leave to amend his complaint by alleging that all of the City's acts were willful and deliberate and seeking $48,-000 as costs of the litigation. Leave to file the amendment was denied. Some facts were stipulated. Some depositions were taken. The trial of the case began on May 31, 1966. During the examination of the first witness court and counsel embarked upon a colloquy which took considerable time and covered many pages of the transcript. During this discussion the judge made frequent factual statements based upon his own experience with respect to lands in the area. The court stated that mandatory injunctive relief would not be granted. Counsel for the appellant stated that no past or future damages would be sought, except, we assume, the claim for costs of litigation as asserted in his proposed amendment which the court rejected. By leave of court, the appellant made a tender of proof. When this was concluded the court announced:

"Well, in view of the situation, I am going to call a jury in this case and set it over for the fall term on the ground that I think there is an adequate remedy at law, and particularly in view of the fact that it requires engineering and executive action on the part of the Court, under the supervision of the Court, to give you the relief that you proposed by injunction and also requires the drainage district's cooperation, which is not before me, and I am unable to order them to do anything.

"It may be that if you get assurance on that that Judge Fulton will take another idea. I think it is very practical. I appreciate your suggestion. I think perhaps moneywise it might be the practical thing to do if it can be done as cheaply as you think it can be done. But I do think that there are no questions about an adequate remedy at law. If I may predict, I think it may be done in the future, anyway.. I will repeat: If you want me to predict, like some people are given to do, I think it will be done in the future. The present thing will dry up of its own volition, because of the development of the higher land to the west."

This was followed by an opinion and order. In the opinion it was said that it was the decision of the court that the appellant was not entitled to a mandatory injunction to require the City to drain the appellant's land. The order recited that he could "sue for money damages and receive full compensation for any injuries caused by wrongful interference with his natural drainage." On the damage issue the City had requested a jury trial. The opinion concluded "whether any other equitable relief prayed by plaintiff is appropriate may be entertained by the court at the trial on the issue of damages." By the court's order,

"1. Plaintiff's claim for mandatory injunctive relief is denied, and plaintiff is relegated to his action for damages, and/or such other relief as might be found proper by the trial court.

"2. Defendant's *ore tenus* motion for jury trial is granted."

The cause was continued until the further order of the court. Fox filed a notice of appeal from the foregoing order denying mandatory injunctive relief and from the order denying leave to amend the complaint. The City filed in this Court a motion to dismiss the appeal on the ground that neither order is appealable. The motion was carried with the appeal.

We first consider the appealability of the order denying injunctive relief. The order is not an interlocutory order refusing an injunction which would be appealable under 28 U.S.C.A. § 1292(a). No application for an appeal under 28 U.S.C.A. § 1292(b) was made. If this Court has jurisdiction of the appeal it is because it is from a final decision under 28 U.S.C.A. § 1291. The initial difficulty is in determining what the district court decided. The opinion and the order are one document. In the opinion the court states as the most pertinent consideration the ancient rule that an equitable remedy, that is, injunction, is not available. The opinion recites that "The plaintiff may sue for money damages and receive full compensation for any injuries caused by wrongful interference with his natural drainage." Thus it may be that the district court has held or intended to hold that the appellant would not be entitled to any injunctive relief, either mandatory or prohibitory. Yet the court also said that in addition to money damages, "whether any other equitable relief prayed by plaintiff is appropriate may be entertained by the court at the trial on the issue of damages." By the order the claim for mandatory injunctive relief was denied and the appellant was "relegated to his action for damages, and/or such other relief as might be found proper by the trial court." The relief prayed by the appellant was:

"(a) That defendant be enjoined from pumping except under such safeguards as this Court may find reasonably necessary and appropriate to assure plaintiff against any artificial flooding of his land.

"(b) That defendant be enjoined from interference with the natural drainage of water from plaintiff's land on to defendant's land, and that the defendant be required to take such steps as this Court may find reasonably necessary and appropriate to restore plaintiff's land to its condition of natural drainage.

"(c) That this Court determined the amount of damage done to plaintiff's land by defendant's acts in past maintenance of structures which so interfere with such drainage, and require defendant to pay that amount to plaintiff."

The prayer of the complaint is for compensatory damages in addition to injunctive relief. The injunctive relief sought seems to be in part prohibitory and in part mandatory. The order, by its terms, denies only the right to mandatory injunctive relief and preserves the appellant's right to "other relief" and this, we think, can be only other injunctive relief. It may be that a prohibitory injunction, without mandatory injunctive relief, would not be adequate or even remedial to any extent. We do not know and will not guess. The appellant, before the district court and before this court disclaimed all damages for past and future injuries. He did not amend his complaint by the deletion or striking of the prayer for compensatory damages. If there remains in the cause a claim for prohibitory injunctive relief or for compensatory damages, or both, then the orders from which the appellant has sought to appeal leave the cause incomplete, and the order without appealable finality. The Supreme Court has thus stated the rule:

"The effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal. * * *

"Nor does the statute permit appeals, even from fully consummated de-

cisions, where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results." Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528.

On the other hand, if the effect of the Court's order was to deny all injunctive relief or if any prohibitory injunctive relief that might be granted would be wholly ineffective, and if the appellant had waived, renounced or had estopped himself to assert a claim for compensatory damages, then it would seem to follow that the court's order was, for all practical purposes an end of the litigation and a final judgment in the cause from which an appeal to this Court will lie.

■■ On the issue of appealability plausible and forceful reasons can be urged for and against. What then must we do? We think the answer is to be found in Gillespie v. U. S. Steel Corporation, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed. 2d 199. The Court said:

"Under § 1291 an appeal may be taken from any 'final' order of a district court. But as this Court often has pointed out, a decision 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545, [69 S.Ct. 1221, 1225, 93 L.Ed. 1528]. And our cases long have recognized that whether a ruling is 'final' within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the 'twilight zone' of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a 'practical rather than a technical construction.'

Cohen v. Beneficial Industrial Loan Corp., supra, 337 U.S., at 546, [69 S. Ct., at 1226]. See also Brown Shoe Co. v. United States, 370 U.S. 294, 306, [82 S.Ct. 1502, 1513, 8 L.Ed.2d 510]; Bronson v. [LaCrosse & M.] Railroad Co., 2 Black 524, 531 [17 L.Ed. 347, 359]; Forgay v. Conrad, 6 How. 201, 203, [12 L.Ed. 404]; Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, [70 S.Ct. 322, 324, 94 L.Ed. 299], pointed out that in deciding the question of finality the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' Such competing considerations are shown by the record in the case before us. It is true that the review of this case by the Court of Appeals could be called 'piecemeal'; but it does not appear that the inconvenience and cost of trying this case will be greater because the Court of Appeals decided the issues raised instead of compelling the parties to go to trial with them unanswered. * * * Furthermore, in United States v. General Motors Corp., 323 U.S. 373, 377, [65 S.Ct. 357, 359, 89 L.Ed. 311], this Court contrary to its usual practice reviewed a trial court's refusal to permit proof of certain items of damages in a case not yet fully tried, because the ruling was 'fundamental to the further conduct of the case.' For these same reasons this Court reviewed such a ruling in Land v. Dollar, 330 U. S. 731, 734, n. 2, [67 S.Ct. 1009, 91 L. Ed. 1209], and Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682–685, n. 3, [69 S.Ct. 1457, 1459, 93 L.Ed. 1628], where, as here, the case had not been fully tried." 379 U.S. 152–154, 85 S.Ct. 311.

We give to the requirement of finality a practical rather than a technical construction. We have considered the inconvenience and cost of piecemeal review and the danger of denying justice by delay. We have concluded that the validity of the district court's order in denying to appellant the right to assert a claim

for a mandatory injunction was fundamental to the further conduct of the case, and hence has such attributes of finality as to bring it within Section 1291 as an appealable order.

■ If an effort had been made to take an appeal from the order denying leave to assert a claim for costs of litigation, with nothing presented but the validity of such order, it would be difficult, if not impossible, to find a basis for appellant jurisdiction. However, the question as to the validity of such order is so closely related to the appeal from the order on injunctive relief as to justify a review of the former as well as of the latter. Stewart-Warner Corporation v. Westinghouse Electric Corporation, 2nd Cir. 1963, 325 F.2d 822, cert. den. 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767; Skirvin v. Mesta, 10th Cir. 1944, 141 F.2d 668. Consideration will be given to the merits of both of the orders.

■ The case came on for trial in the district court without a jury. A number of documentary exhibits were introduced by agreement. The appellant called his first witness, an engineer. Before the witness had finished testifying, the question of mandatory injunctive relief was raised by the court, the order, heretofore dismissed, was entered and the case was continued. The case comes before this Court in an unusual posture. No motion for summary judgment, or to limit the issues, or for any other judicial relief, was pending. The court, at the beginning of the trial, sua sponte, entered an order denying the appellant the right to the injunctive relief which he sought and requiring him to content himself with compensatory damages which the appellant did not want. There is no question but that mandatory injunctions are to be sparingly issued and upon a strong showing of necessity and upon equitable grounds which are clearly apparent. But where the necessity exists and the grounds are shown courts will not hesitate in granting the remedy. United States v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L. Ed. 978; Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, 90 L.Ed. 1199; State of Alabama v. United States, 5th Cir. 1962, 304 F.2d 583, aff. 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112. It is not at all unlikely that the appellant will be unable to support by evidence his claim for mandatory injunctive relief or for prohibitory injunctive relief, but he ought to be given the opportunity to try his case and submit his evidence free from the coloring of the personal knowledge of the judge.[1]

■ The court may, of course, take judicial notice of facts which need not be proved. The most frequent application of the judicial notice doctrine is common knowledge. The rule has been thus declared:

"Judicial notice in any particular case is not determined or limited by the actual knowledge of the individual judge or court. This means that it is not essential that matters of judicial cognizance be actually known to the judge; if they are proper subjects of judicial notice, the judge may inform himself in any way which may seem best to his discretion, and act accordingly. On the other hand, facts which are not judicially cognizable must be proved, even though known to the judge or to the court as an individual. In other words, the individu-

---

1. Among the comments of the judge before and during the tender were the following:

"As a matter of fact, I have litigated some of these things as a lawyer that you are litigating today.

"You are not entitled to have your land dried, I will say that, because your land was never dried, so far as I know. I flew over it forty years ago and it wasn't dry at all.

"The cost of making the changes here would be the cost of at least a billion dollars—at least a billion dollars to make this land dry and make sure that it will be dry.

"If you would go out there and drain that land or any other like land, the cost would be so atrocious that you could buy all the dry land in North Florida, practically, for what you are paying to drain a little of this land.

"I know. I had some of the land. I sold it. Let it go for taxes.

"We destroyed I guess 1,000 acres of pine in Dade County to get rid of it to make way for good subdivisions."

al and extrajudicial knowledge on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record." 29 Am. Jur.2d 55, Evidence § 15. See Brown v. Piper, 91 U.S. 37, 23 L.Ed. 200; Burr v. N. L. R. B., 5th Cir. 1963, 321 F.2d 612; Amos v. Moseley, 74 Fla. 555, 77 So. 619, L.R.A.1918C, 482.

A number of the factual observations of the district judge in this case were within the bounds of common knowledge [2] and of these judicial notice was permissible. But many of the judicial comments were factual statements within the extrajudicial knowledge of the judge and these are not to be judicially noticed nor an ingredient in the determination of any phase of the litigation. It cannot be said, from a reading of the record, that these facts were not factors in reaching the decision. The order rejecting the appellant's claim for mandatory injunctive relief will be reversed and the cause will be remanded for further proceedings. This conclusion is not to be regarded as an intimation of any opinion of this Court that the appellant by his tender of proof, or otherwise, has established or can establish any right to any kind of injunctive or other relief. Nothing is to be implied beyond the limited holding that the district court's order, at the time and under the circumstances made, was erroneous.

 The order of the district court denying leave to the appellant to file an amendment to his complaint should be affirmed. Courts should be liberal in allowing amendments to pleadings but after an answer is filed, leave of court is required. Rule 15 Fed.Rules Civ.Proc. 28 U.S.C.A. The allowance of an amendment to a complaint after an answer has been filed is within the discretion of the district court and its action will not be reviewed on appeal unless there has been an abuse of discretion. Hall v. National Supply Co., 5th Cir. 1959, 270 F.2d 379. A court will not, ordinarily, pass upon the sufficiency of an amendment to a complaint upon a motion for leave to file. However, the sufficiency may be considered, on appeal, in determining whether there has been an abuse of discretion. Peterson Steels, Inc. v. Seidmon, 7th Cir. 1951, 188 F.2d 193. Whatever may be the rule in other jurisdictions, it is the Florida rule that in the absence of a contractual or statutory liability, attorneys' fees and other expenses of litigation are not recoverable as an item of damages. 9 Fla.Jur. 413, Damages § 77; Sundie v. Lindsay, Fla.App., 166 So.2d 152; Gannett v. King, Fla. App., 108 So.2d 299; Capitol Lincoln-Mercury, Inc. v. General Motors Acceptance Corporation, Fla.App., 105 So.2d 899; Codomo v. Emanuel, Fla., 91 So.2d 653; Fred Howland, Inc. v. Gore, 152 Fla. 781, 13 So.2d 303. The appellant recognizes the rule but seeks to avoid it by his allegation that the acts of which he complains were done willfully and deliberately. This is the doctrine of exemplary or punitive damages. Punitive damages cannot be recovered in Florida against a municipal corporation. City of Miami v. Breslin, Fla.App., 172 So.2d 274; Fisher v. City of Miami, Fla.App., 160 So.2d 57. There was no abuse of discretion in denying leave to file the amendment to the complaint.

The order of the district court denying the right to assert a claim for mandatory injunctive relief is reversed and the cause is remanded for further proceedings. The order denying leave to file an amendment to the complaint is affirmed.

Affirmed in part, reversed in part, and remanded.

---

2. As for example, the statement that "I can testify to where cypress grows, pine doesn't grow."