## STATE OF WISCONSIN INVESTMENT BOARD, Plaintiff,

v.

## PLANTATION SQUARE ASSOCIATES, LTD., et al., Defendants.

### No. 88–1883–Civ.

United States District Court,
S.D. Florida.

April 6, 1991.

Lawrence Metsch, Miami, Fla., for plaintiff.

Robert C. Kahrl, Cleveland, Ohio, for defendants Zaremba Plantation Square Co., Zaremba Jog Co., Zaremba Congress Co., Zaremba Corp., Walter Zaremba.

Richard E. Berman, J. O'Grady Fort Lauderdale, Fla., and Michael D. Katz, Miami, Fla., for defendants Plantation Square Associates Ltd., Jog Associates Ltd., Congress Associates Ltd., Wenal Jog Co., Wenal Congress Co., HSW Investments Inc., Harold Wenal.

Michael H. Gora, Boca Raton, Fla., for defendant Jerald Rosenbloom.

## MEMORANDUM & ORDER

HOEVELER, District Judge.

THIS CAUSE IS before the court upon several motions of the parties relating to an attempt by the defendants to dismiss Plaintiff's claim for punitive damages and attorneys' fees.[1] Plaintiff State of Wisconsin Investment Board ("SWIB") is an independent state agency which invests and manages pension funds for the benefit of Wisconsin's public employees. SWIB has filed a four count Complaint asserting fraud, breach of fiduciary duty, and two separate breach of contract claims, all arising out of the sale of three shopping centers in Broward and Palm Beach counties. The slew of defendants named in Plaintiff's Complaint include the three limited partnerships which owned the shopping centers and the partners individually, along with several related individuals and corporations who also participated in the purportedly fraudulent sales. The court's jurisdiction is derived exclusively from the diverse citizenship of the parties.

### I. Punitive Damages

The defendants have moved to dismiss SWIB's claim for punitive damages for failure to comply with Florida Statutes § 768.72.[2] That statute, which came into law as § 51 of the Tort Reform and Insurance Act of 1986, Chapter 86–160, provides:

In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

Plaintiff has submitted a "proffer" of documents which it claims meets the statutory basis for asserting punitive damages but at the same time argues that the court need not examine the proffer in that, under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, § 768.72 is a state procedural rule undeserving of application by a federal court sitting in diversity.

It is this latter argument of Plaintiff to which the court first turns, as the issue has

---

**1.** These motions include the Wenal Defendants' Motion to Strike Claim for Punitive Damages and Attorneys' Fees, Plaintiff's Proffer of Evidence Pursuant to Florida Statutes § 768.72, the Wenal Defendants' Response to Plaintiff's Proffer, the Zaremba Defendants' Memorandum in Opposition to Plaintiff's Proffer, Plaintiff's Motion to Strike Memoranda in Opposition to Plaintiff's Proffer of Evidence, the Wenal Defendants' Response to Plaintiff's Motion to Strike, the Zaremba Defendants' Memorandum in Opposition to Plaintiff's Motion to Strike, and Plaintiff's Reply Memorandum in Support of Motion to Strike Defendants' Memoranda.

**2.** The Wenal Defendants have also moved to dismiss Plaintiff's punitive damage claim on the grounds that such damages are unavailable under Plaintiff's breach of contract and constructive trust theories. Plaintiff, however, only seeks punitive damages under its fraud claim. Plaintiff's Motion to Strike Memorandum in Opposition to Plaintiff's Proffer at 2. The Wenal Defendants have further argued that Plaintiff cannot seek punitive damages where its fraud claim is merely a contract claim by another name and where punitive damages are not allowed for breach of contract. This argument is unavailable to the defendants in light of this court's Order dated January 8, 1990, finding Plaintiff to have alleged a fraud claim distinct and independent from its breach of contract claim. Order Denying Motion to Dismiss at 4.

been sharply disputed in Florida's district courts and, indeed, in other district courts throughout the country regarding similar state statutes. The *Erie* doctrine's mandate that federal courts sitting in diversity shall apply state substantive law while following federal procedure has proven itself an oft-visited but ill-defined by-product of our federalist system. The Supreme Court and lower courts have wrestled often over the years with highly elusive demarcations between substance and procedure when determining which state rules must be applied under *Erie.* Much of this struggle is likely owed to the fact that traditional notions of substance and procedure are of limited help in an analysis where a given rule is "rationally capable of classification as either," *Hanna v. Plumer,* 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8, 17 (1965), and, consequently, where a rule's substantive or procedural nature proves ultimately more a conclusion than a premise.

Initially, the Supreme Court adopted an "outcome determinative" test in *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), holding that "substantive" state laws under *Erie* were those which, when not enforced in federal court, would "significantly affect the result of a litigation." *Id.* at 109, 65 S.Ct. at 1470. Finding that it proved too much, the Court receded from the stringencies of *York* in *Byrd v. Blue Ridge Rural Electric Co-op.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1956), adopting an approach which balanced the federal interest in uniform process against the state interest in uniformity of results. *See Lundgren v. McDaniel,* 814 F.2d 600, 606 (11th Cir. 1987). Yet perhaps not until *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), did the Court make it clear how far from *a priori* truths are the concepts of substance and procedure under *Erie. Hanna* demonstrates that proper classification of a state rule can only be determined after a rigorous inquiry which engages two separate lines of analysis.

■ Under *Hanna,* the preliminary inquiry for a district court is whether the state provision directly conflicts with a Federal Rule of Civil Procedure. *Id.* at 470, 85 S.Ct. at 1143, 14 L.Ed.2d at 16. *See also Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–50, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659, 667 (1980). If a court determines that a direct conflict exists, it must then employ the *Hanna* analysis, which calls for application of the Federal Rule unless it (1) is beyond the scope of the Rules Enabling Act, 28 U.S.C. § 2072,[3] or (2) is otherwise unconstitutional. *Hanna,* 380 U.S. at 470–71, 85 S.Ct. at 1143–44.

■ Where no direct collision between a Federal Rule and the state statute exists, the *Hanna* test does not apply. *Walker,* 446 U.S. at 752, 100 S.Ct. at 1986. Instead, the district court must pursue a second line of analysis directly under *Erie.* This analysis effectuates the *Byrd* balancing test by employing federal procedure unless doing so would violate the "twin aims" of *Erie:* (1) "discouragement of forum-shopping" and (2) "avoidance of inequitable administration of the laws." *Hanna,* 380 U.S. at 468, 85 S.Ct. at 1142; *Walker,* 446 U.S. at 752–53, 100 S.Ct. at 1986. *Lundgren,* 814 F.2d at 606.

Absent scrutiny under these two lines of analysis, deciding when to apply a state rule in federal court becomes a battle of divining rods and crystal balls. With these analyses in mind, then, the court turns its attention to § 768.72.

A. *The Statute as Both a Pleading Rule and a Discovery Rule*

Preliminarily, it must be conceded that § 768.72 is both a pleading rule and a discovery rule. The greater part of the statute addresses the standard for pleading a punitive damage claim. However the last sentence, permitting discovery of a defendant's financial worth only after a punitive damage claim has been permitted, is of an entirely different nature than the rest of the statute and, *for Erie* purposes, must be

---

**3.** The Act provides in pertinent part:

The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts ...

Such rules shall not abridge, enlarge or modify any substantive right.

analyzed separately as a rule of discovery.[4]

## B. *The Pleading Aspects of § 768.72*

Since the statute's adoption in 1986, other district courts in Florida have addressed the issue of whether § 768.72 is procedural or substantive under the *Erie* doctrine. With the notable exception of *Citron v. Armstrong World Industries, Inc.,* 721 F.Supp. 1259 (S.D.Fla.1989), all reported cases have applied § 768.72 as substantive State law in federal diversity actions. *See Bankest Imports, Inc. v. ISCA Corp.,* 717 F.Supp. 1537 (S.D.Fla.1989); *Frio Ice, S.A. v. Sunfruit,* 724 F.Supp. 1373 (S.D.Fla. 1989); *Lancer Arabians, Inc. v. Beech Aircraft Corp.,* 723 F.Supp. 1444 (M.D.Fla. 1989); *Dah Chong Hong Ltd. v. Silk Greenhouse, Inc.,* 719 F.Supp. 1072 (M.D. Fla.1989); *Jerry W. Lewis v. Snap On Tools Corp.,* 708 F.Supp. 1260 (M.D.Fla. 1989); *McCarthy v. Barnett Bank of Polk County,* 750 F.Supp. 1119 (M.D.Fla.1990).

In other jurisdictions district courts facing virtually identical state statutes have been more divided in deciding whether to apply the state provision. *See NAL II, Ltd. v. Tonkin,* 705 F.Supp. 522 (D.Kan. 1989) (state statute conflicted with Federal Rules and would not be given effect in federal diversity case and even if no conflict were found, *Erie* analysis did not compel application of the state rule); *Belkow v. Celotex Corp.,* 722 F.Supp. 1547, 1551–52 (N.D.Ill.1989), citing *Berry v. Eagle–Picher,* 1989 WL 77764, 1989 U.S.Dist. LEXIS 7671 (N.D.Ill.1989) (same); *Kuehn v. Shelcore, Inc.,* 686 F.Supp. 233 (D.Minn.1988) (state statute does not conflict with federal rule and should be applied in federal court under *Erie* analysis); *Zeelan Industries, Inc. v. de Zeeuw,* 706 F.Supp. 702 (D.Minn. 1989) (same); *Windsor v. Guarantee Trust Life Ins. Co.,* 684 F.Supp. 630 (D.Idaho 1988) (same).

The court is unaware of any appellate decision which has dealt with the issue now before it. Indeed, because a district court's decision of whether to apply a state punitive damage pleading rule is not immediately appealable, and because the district court's ruling would in all likelihood not affect the outcome of the litigation,[5] appeal of such a ruling, though possible in some narrow contexts,[6] has proven elusive as of yet.

### (1) The Pleading Aspects of § 768.72 Under the *Hanna* Analysis

■ In addressing the first question under *Hanna*—whether § 768.72 directly collides with a Federal Rule—it is first necessary to discern the relevant rule. This initial task is one over which district courts facing state punitive damage pleading rules have differed. Some courts, including the only district court to identify a Rule conflicting with the Florida statute, *see Citron,* 721 F.Supp. at 1261, as well as the parties now before this court, have identified Federal Rule 9(g) as the focus of potential conflict with the state provision. *See also, NAL II, Ltd v. Tonkin,* 705 F.Supp. at 528 (finding Kansas statute in conflict with Rule 9(g)).

Rule 9(g) requires that "[w]hen items of special damages are claimed, they shall be specifically stated." Yet read in light of the Supreme Court's pronouncements in *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the court finds no unavoidable conflict between Rule 9(g) and § 768.72. In *Walker,* the Court reaffirmed its pre-*Hanna* holding in *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed 1520 (1949), that the provision in Federal Rule 3 commencing a civil action upon the "filing" of a complaint does not conflict with state statutes of limitations which commence lawsuits upon *service* of the summons and complaint. *Walker,* 446 U.S. at 750–51, 100 S.Ct. at 1985–86. Though the language of Rule 3 and the Oklahoma statute of limitation provision seemed to conflict on their face, the Court explained:

---

**4.** Neither the parties nor the other courts which have addressed § 768.72 have applied the *Hanna* or *Erie* analysis to the statute's discovery provision. Though perhaps inelegant, *Erie* and its progeny demand no less.

**5.** *See* Section I.B.(2), *infra.*

**6.** *See Windsor v. Guarantee Trust Life Ins. Co.,* 684 F.Supp. 630 (D.Idaho 1988) (where court's application of state statute prevented plaintiff from alleging the requisite jurisdictional amount in controversy and led to dismissal of action).

There is no indication that [Rule 3] was intended to toll a statute of limitations, much less that it purported to displace state tolling rules for purposes of state statutes of limitations. In our view, in diversity actions, Rule 3 governs the date from which various timing requirements of the federal rules begin to run, but does not affect state statutes of limitations.

*Id.* (footnotes omitted). Similarly, Rule 9(g) can co-exist with § 768.72. Though the Rule "requires, in mandatory language, that a claim for punitive damages be set forth in a party's complaint," *NAL II, Ltd, v. Tonkin,* 705 F.Supp. at 528, it makes no reference as to *when* such damages are to be set forth in the complaint. It only requires that, when plead, they be plead specifically. Conceivably, a state statute could allow a right of action to punitive damages to accrue only six months after the filing of a lawsuit or only after a plaintiff prevailed on its underlying compensatory claim. Neither these delays in the pleading of punitive damages nor that engendered by § 768.72's requirement of some minimum reasonable basis determination directly conflicts with Rule 9(g). The specificity required by 9(g) has no more effect on the timing of a state punitive damage claim than Rule 3 does on the tolling of a state statute of limitation.

The Florida statute, however, does directly and irreconcilably conflict with Federal Rule 8. Rule 8(a)(2) provides that a plaintiff's complaint establishes a claim by setting forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Section 768.72 obviously requires much more than a mere "short and plain statement" for establishing a punitive damage claim in that it necessitates 1) the presentation of evidence in the record or proffered by Plaintiff to demonstrate that there exists a reasonable basis for a punitive damage claim and 2) court review and determination that Plaintiff's evidentiary proffer meets the statute's "reasonable basis" standard.

The only way to avoid recognizing a direct conflict is to argue that Rule 8 is a floor for pleading claims and not a ceiling. *See Kuehn v. Shelcore, Inc.* 686 F.Supp. at 234. While a strict reading of Rule 8's language that "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement ..." does not preclude the imposition of pre-pleading requirements, it is irrefutably clear from its history and interpretation that Rule 8 is the sole and full requirement for stating entitlement to relief in federal courts. Rule 8 represents a paring down of other functions pleadings have historically fulfilled. Under the Federal Rules, discovery allows for the relevant facts to be determined, discovery and pretrial motions to dismiss or for partial summary judgment narrow the legal issues, and summary judgments dispose of sham claims and insubstantial defenses. 5 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE: § 1202 at 69 (2d ed. 1990). "The only function left to be performed by the pleadings alone is that of notice" *Id.* Indeed, that the concept of "notice pleading and no more" infuses the entire spirit of Rule 8 was made manifest by the Supreme Court's seminal holding in *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957): *"[A]ll* the Rules require is a 'short and plain statement of the claim' that will give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests." (Emphasis added.)

To apply § 768.72 in federal courts would, in essence, convert the pleading of punitive damages from the requirement of mere notice to a quasi-adjudication of plaintiff's claim, requiring evidentiary inquiry and discovery, argumentation of counsel, and a judicial ruling. *See Berry v. Eagle-Picher,* 1989 WL 77764, 1989 U.S.Dist LEXIS 7671 (N.D.Ill.1989) (Illinois punitive damage pleading rule conflicts with notice pleading of Rule 8).[7] Such an application

---

**7.** The courts which have found state punitive damage pleading rules to conflict with Rule 9(g) appear to have been actually detecting the state rule's discordance with Rule 8, the pleading provisions of which underlie the rules governing pleading of special matters found in Rule 9. *See Citron,* 721 F.Supp. at 1261; *NAL II, Ltd. v. Tonkin,* 705 F.Supp. at 527.

would subvert not only the intent of Rule 8, but the entire system of the Federal Rules. As has been noted,

> Rule 8 is the keystone of the system of pleading embodied in the federal rules.... To some degree, the functioning of all the procedures in the federal rules for broad joinder of the parties and claims, discovery, free amendment, and summary judgment are intertwined inextricably with the pleading philosophy embodied in Rule 8.

5 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE: § 1202 at 68 (2d ed. 1990). *See also, Sparkman v. McFarlin*, 601 F.2d 261, 276 n. 16 (7th Cir.1979).

■ Having concluded that the pleading aspects of § 768.72 conflict with the Federal Rules, the court must next determine whether, under the *Hanna* analysis, Rule 8(a) is beyond the scope of the Rules Enabling Act, 28 U.S.C. § 2072, or beyond the power of Congress under the Constitution. *Hanna*, 380 U.S. at 470–71, 85 S.Ct. at 1143–44. The court finds Rule 8 to be neither. As a pleading rule, Rule 8(a) squarely fits within the Enabling Act as a "general rule" prescribing the form of "practice and procedure ... in the ... district courts." 28 U.S.C. § 2072.

Nor does Rule 8, as herein applied, "abridge ... or modify any substantive right" within the meaning of the Enabling Act. Defendants argue—citing for support all the Florida district courts, save *Citron*, which have addressed § 768.72—that not applying the statute in Federal court would abridge their substantive rights as defined by the Florida Supreme Court in *Smith v. Dept. of Insurance*, 507 So.2d 1080 (Fla. 1987). *Smith* was a broad constitutional attack on the 1986 Tort Reform and Insurance Act. In part, the Florida Supreme Court held in *Smith* that § 768.72 did not violate the State Constitution's separation of powers clause in that the provision was not merely procedural and solely a matter of concern for the judiciary, but sufficiently affected substantive rights of civil litigants as to properly fall within the sphere

of the legislature's powers. *Id.* at 1092 n. 10. Specifically, the Court held:

> Section [768.72] is clearly substantive because it sets the standard for establishing a claim for punitive damages. The legislature, which has the authority to abolish punitive damages can surely set the standard for establishing such claims. The Court is of the view that [§ 768.72] create[s] substantive rights and further that any procedural provisions of [this] section[ ] [is] intimately related to the definition of those substantive rights.

*Id.* (Quoting and adopting the trial court's opinion).

Yet, as *Citron* ably notes, the Florida Supreme Court had neither the cause nor the capacity to determine whether § 768.72 is substantive or procedural for purposes of federal diversity actions. *Citron*, 721 F.Supp. at 1261. In holding that the statute sets the standard for "establishing" punitive claims, the Court must have meant only "the pleading of" such claims. It could not mean that § 768.72 adds any substantive element to punitive damage claims, because it clearly does not. To attain an award of punitive damages, a plaintiff in Florida still needs to establish the same level of fraudulent, malicious, or wanton conduct [8] by a defendant whether or not the statute is applied. Section 768.-72 merely changes the time at which a plaintiff can plead punitive claims and at which defendants are formally exposed to such claims. While such alterations in the respective rights of the parties may be substantive for purposes of the Florida legislature's plenary powers, they are not substantive as defined by the Rules Enabling Act. This much is evident from the Supreme Court's gloss on the Enabling Act in *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed 185 (1946):

> Undoubtedly most alterations of the rules of practice and procedure may and often do affect the rights of litigants. Congress' prohibition of any alteration of substantive rights of litigants was obvi-

---

**8.** *See Wackenhut Corp. v. Canty*, 359 So.2d 430, 435 (Fla.1978).

ously not addressed to such incidental effects as necessarily attend the adoption of the prescribed new rules of procedure upon the rights of litigants who, agreeably to rules of practice and procedure, have been brought before a court authorized to determine their rights.

*Id.* at 445–46, 66 S.Ct. at 246. This court is of the decided view that statutes such as § 768.72 neither alter the substantive elements governing punitive damages nor grant litigants any substantive rights within the meaning of the Rules Enabling Act. Allowing punitive damages to be plead under Rule 8 rather than the State statute therefore, would not violate Congress' mandate embodied in the Enabling Act. Nor is there any suggestion that application of Rule 8 here would in any way transgress Congress's Constitutional bounds. Accordingly, Rule 8(a) controls and the court declines to apply the pleading aspects of § 768.72.

Though the court's somewhat extensive analysis has been necessary to address the current confusion concerning § 768.72, a plethora of authority exists to support the court's conclusion. It is, in fact, essentially axiomatic that pleading in federal courts are governed wholly by the Federal Rules. *See e.g., Follenfant v. Rogers,* 359 F.2d 30, 31–32 (5th Cir.1966) (Texas rule requiring pleadings be verified by affidavit or opponent's assertion deemed admitted, of no effect in federal courts since "[i]n matters of pleading, federal courts are not governed by the state practice, but by the Federal Rules of Civil Procedure"); *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir. 1985) (though state law governs the substantive elements, Federal Rules govern manner of pleading fraud); *Bank of St. Louis v. Morrissey,* 597 F.2d 1131, 1134–35 (8th Cir.1979) (Missouri's technical rules of pleading contract actions inapplicable as "federal courts apply the Federal Rules of Civil Procedure in questions regarding pleadings, not state rules"); *Hill v. State of Florida Dept. of Health & Rehabilitative Servs.,* 715 F.Supp. 346, 349 (M.D.Fla. 1989) (plaintiffs need not plead "ultimate facts" in accord with Florida pleading requirements but are bound only by Rule

8(a)(2) of the Federal Rules). *See generally,* 5 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE: § 1204 at 81–85. (2d ed. 1990).

### (2) The Pleading Aspects of § 768.72 Under the *Erie* Analysis

■ Because the statute clashes with Rule 8 and *Hanna* applies, the court has had no need to conduct an *Erie* analysis. Yet even if no conflict between § 768.72 and the Federal Rules existed, the court would not apply the statute's pleading aspects as failure to do so would lead to neither an inequitable administration of the laws nor to forum-shopping. *See Hanna,* 380 U.S. at 468, 85 S.Ct. at 1142; *Walker,* 446 U.S. at 752–53, 100 S.Ct. at 1986. Because of the statute's own liberal procedures for amendment, all diligent litigants with valid punitive damage claims in State court are eventually able to assert their claims under § 768.72, thus ensuring the same outcome under either rule of procedure. *Citron,* 721 F.Supp. at 1262, citing *NAL II, Ltd. v. Tonkin,* 705 F.Supp. at 529. Nor is it apparent that, absent application, so substantial a difference would exist between a federal defendant's formal exposure to pled, but unproven, punitive claims and the ever-present threat of a State defendant's exposure to equally discoverable punitive claims as to lead a plaintiff to regularly choose the federal over the State forum. Not only, then, is the statute not "substantive" within the meaning of the Rules Enabling Act under the *Hanna* analysis, neither is it "substantive" for *Erie* purposes. *See Hanna,* 380 U.S. at 471, 85 S.Ct. at 1143–44 (the two definitions of "substantive" are not identical).

### C. *The Discovery Aspects of § 768.72*

The last sentence of § 768.72, providing that "[n]o discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted" is unique among the state punitive damage pleading statutes of which the court is aware, and indeed, appears to be unique among state discovery rules.[9] As earlier noted, this portion of the statute has no relation to the

---

**9.** The court's research has failed to uncover any other similar state statutory provision.

canons of pleading under Rules 8 and 9. Instead, the provision potentially conflicts with Rule 26(b)(1) which allows for broad discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action."

Federal and state courts have, as a matter of course, found a defendant's financial condition relevant for discovery purposes where punitive damages have been at issue, *see Mid Continent Cabinetry v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D.Kan.1990) (collecting federal cases); Annotation, *Pretrial Discovery of Defendant's Financial Worth on Issue of Damages*, 27 A.L.R. 1375 (1969) (collecting state cases), "since ... the degree of punishment or deterrence resulting from a [punitive] judgment is to some extent in proportion to the means of the guilty person." RESTATEMENT (Second) OF TORTS § 908(2), Comment e. at 466 (1979). *See also, Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 270, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded").

A more contested issue has concerned whether financial worth discovery should be considered relevant (1) upon the pleading of a punitive claim, (2) only after some *prima facie* showing by plaintiff of defendant's liability, or (3) only after the trier of fact has determined defendant's liability for punitive damages. Most federal courts which have addressed the issue have found the mere pleading of a punitive claim sufficient to entitle a plaintiff to information of a defendant's financial condition. *Mid Continent Cabinetry*, 130 F.R.D. at 151 (collecting cases). However, some federal courts have found it necessary that plaintiffs establish a *prima facie* case first, *see e.g., Skinner v. Aetna Life Ins. Co.*, 38 Fed.R.Serv.2d 1194, 1195 (D.D.C.1984); *Chenoweth v. Schaaf*, 98 F.R.D. 587, 589–90 (W.D.Pa.1983), while others have deemed net worth discovery appropriate only after determination of punitive liability. *See e.g., Doralee Estates, Inc. v. Cities Service Oil Co.*, 569 F.2d 716, 723 n. 9 (2d Cir.1977); *Brink's Inc. v. City of New York*, 717 F.2d 700, 707 (2d Cir.1983);

*Davis v. Ross*, 107 F.R.D. 326, 328 (S.D.N.Y.1985).

These courts, either because they were dealing with federal claims or because they simply did not consider the *Erie* issue, have generally based their rulings on Rule 26 without reference to state rules of decision. Of the courts which have had cause to broach the *Erie* question, none has undertaken the in depth analysis required by *Erie* and its progeny. The Second Circuit in both *Doralee Estates* and *Brink's*, and the district court in *Davis v. Ross*, simply assume that the New York State rule barring disclosure of net worth until after a determination of liability is substantive and, therefore, deserving of application in federal court. *Doralee Estates*, 569 F.2d at 723 n. 9; *Brink's*, 717 F.2d at 707; *Davis v. Ross*, 107 F.R.D. at 328. In contrast, the district courts in *American Ben. Life Ins. Co. v. Ille*, 87 F.R.D. 540 (W.D. Okl.1978), and in *Mid Continent Cabinetry* deem such state discovery rules procedural and thereby inapplicable in diversity actions. *See Ille*, 87 F.R.D. at 542; *Mid Continent Cabinetry*, 130 F.R.D. at 151 n. 1. Hesitant to decide the issue on divine intuition alone, the court looks to *Hanna* and *Erie* for help.

(1) The Discovery Aspects of § 768.72 Under the *Hanna* Analysis

■ As *Hanna* instructs, the first task for the court is to determine whether the federal rule is broad enough to cover the point in dispute. *Hanna*, 380 U.S. at 470, 85 S.Ct. at 1143, 14 L.Ed.2d at 16; *see also, Walker*, 446 U.S. at 749–50, 100 S.Ct. at 1984–85. In light of *Walker* and *Ragan*, the court finds no unavoidable conflict between Rule 26 and the delay in discovery of a defendant's financial worth predicated by § 768.72. As discussed in Section I.B.(1), *supra*, the Supreme Court's decision in *Walker* that the commencing of a civil action under Rule 3 does not conflict with different state procedures for commencing civil actions clearly indicates the need for courts to move beyond cosmetic appearances of discord in determining whether a state and federal rule "can exist side by side ... each controlling its own intended

sphere of coverage without conflict." *Id.* at 752, 100 S.Ct. at 1986.

Courts deem discovery of financial worth relevant so that, once punitive liability has been determined, the factfinder can better fashion an appropriate measure of damages by taking into account the defendant's means. *See* Section I.C., *supra.*[10] In apparent contravention of § 768.72, Rule 26 presumes access to discovery contemporaneous with a determination of relevancy.[11] There is nothing in the Rules, however, to suggest this to be an inflexible mandate.[12] The presumption of contemporaneous access seems to be driven, rather, by general notions of efficiency in the litigation process. Yet, delaying production of a defendant's financial worth from the initial phases of discovery until some later stage in the pre-trial litigation does nothing to interfere with the purposes of such discovery under the Federal Rules. Under either the State rule or the Federal Rule, plaintiff will have in hand evidence of the defendant's financial condition at the time it becomes necessary for the factfinder to determine punitive liability.[13] Equally telling as to the lack of conflict between § 768.72 and the Federal Rules is the fact that at least some federal courts—interpreting the Federal Rules—have deemed it proper to postpone discovery of net worth along the lines contemplated by § 768.72. *See, e.g., Skinner v. Aetna Life Ins. Co.,* 38 Fed.R.Serv.2d 1194, 1195 (D.D.C.1984); *Chenoweth v. Schaaf,* 98 F.R.D. 587, 589–90 (W.D.Pa. 1983).

Squared off against this potential flexibility of Rule 26 and the federal policies underlying it stand substantial State policies, of which the delay in discovery of financial worth proves an "integral" part.[14] *See Walker,* 446 U.S. at 751–52, 100 S.Ct. at 1985–86. By adding the last sentence to § 768.72, the Florida legislature has granted its citizens a limited right of privacy to information concerning their net worth when faced with punitive damage claims. While not denying the relevance of such information in cases where legitimate puni-

---

**10.** It has been said that net worth discovery also encourages settlement by encouraging both parties to more accurately evaluate the case. *See e.g., Holliman v. Redman–Development Corp.,* 61 F.R.D. 488, 491 (D.S.C.1973). Though this may be true, the promotion of settlement, by itself, is not a sufficient reason to allow discovery of net worth. If it were, discovery of financial condition would also be a matter of right where plaintiffs were only pursuing compensatory damages. *See id.* (general rule holds that financial worth discovery not permitted where plaintiff not seeking punitive damages); *Doak v. Superior Court,* 257 Cal.App.2d 825, 65 Cal.Rptr. 193 (1968) (same).

**11.** Discovery requests permissible under Rule 26(b)(1) can generally be served on parties anytime after their being brought into the action. *See* Fed.R.Civ.Pro. 33(a); 34(b); 36(a); *but see* Fed.R.Civ.Pro. 31(a) (allowing depositions upon written questions to be propounded earlier: anytime "[a]fter commencement of the action").

**12.** Indeed, Fed.R.Civ.Pro. 30(a)'s prohibition against deposing defendant's until thirty days after they have been brought into the action suggests the opposite: that the Rules' presumption of contemporaneous access may bend when immediate production would unduly burden the defendant.

**13.** The issue is not before the court and, therefore, no opinion is offered as to whether a state rule permitting financial worth discovery only after a finding of punitive liability would so violate the pre-trial discovery procedures of the Federal Rules as to create a direct conflict. *But see Doralee Estates, Inc. v. Cities Service Oil Co.,* 569 F.2d 716, 723 n. 9 (2d Cir.1977); *Brink's Inc. v. City of New York,* 717 F.2d 700, 707 (2d Cir.1983); *Davis v. Ross,* 107 F.R.D. 326, 328 (S.D.N.Y.1985) (applying such a rule in New York to federal diversity actions).

**14.** Though the Supreme Court has not explicitly articulated as much, it is clear that the *Byrd* balancing test between uniform federal procedure and uniform state results also hovers in the background of the crucial preliminary determination as to conflict between the federal and the state rules. *See Byrd,* 356 U.S. at 536–38, 78 S.Ct. at 900–01 (state rule requiring judicial rather than jury review of jurisdictional facts was more a creation of habit than of policy and undeserving of application in light of the "strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts"). While not dispositive of the determination, the forum whose rule is more "integral to" or bound up with the underlying policies which it serves should receive a thumb on the scales in the court's calculus of conflict. *See Walker,* 446 U.S. at 751–52, 100 S.Ct. at 1985–86 (where the Court, in determining that Federal Rule 3 did not conflict with a state rule, found that the Federal Rule "did not replace" the state policy considerations of which the local rule was "an integral part").

tive claims have been advanced, the legislature has sought to protect defendants from disclosure of sensitive financial information until plaintiffs have established some minimum showing of entitlement. Burch Fort, Granger, et al., *Florida's Tort Reform: Response to a Persistent Problem*, 14 FLA.ST.U.L.REV. 505, 545–46 (1986). In an effort to protect Florida citizens from disclosing net worth information in insubstantial and harassing lawsuits—the mere threat of which could be used in some cases to coerce settlement—the legislature, in effect, overruled the Florida Supreme Court's decision in *Tennant v. Charlton*, 377 So.2d 1169 (Fla.1979). There the Court ruled that plaintiffs who had pled punitive damages were entitled to discovery of a defendant's financial resources. *Id.* at 1170.[15] In light of the "several policies served" by the State discovery provision and the lack of a strong federal interest in demanding immediate access to financial worth discovery, the court has little trouble reconciling the seeming confrontation between § 768.72 and Rule 26.[16] *See Walker*, 446 U.S. at 751, 100 S.Ct. at 1985. Accordingly, *Hanna* does not apply. Instead, the State rule deserves further scrutiny under the "twin aims of *Erie*." *Hanna*, 380 U.S. at 468, 85 S.Ct. at 1142; *Walker*, 446 U.S. at 752–53, 100 S.Ct. at 1986.[17]

### (2) The Discovery Aspects of § 768.72 Under the *Erie* Analysis

■ Failure to adopt the State discovery practice would not lead to an inequitable administration of the laws. It is difficult— if not impossible—to imagine how pre-trial production of evidence of financial worth sooner, rather than later, would change the result of any given litigation.

Yet the court finds that disregard of § 768.72's discovery provision could lead to forum-shopping. While non-application of the State rule would not affect the litigation's end result, *Erie*'s forum-shopping analysis also forbids ignoring the State rule where doing so would substantially alter the "character" of the litigation. *Hanna*, 380 U.S. at 468 n. 9, 85 S.Ct. at 1142 n. 9 (the appropriate question under *Erie* is "whether application of the [state] rule would make so important a difference to the *character* or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum state, or ... would be likely to cause a plaintiff to choose the federal court"). (Emphasis added). Plaintiffs with insubstantial punitive damage claims—especially those of the harassing and unscrupulous sort—would likely prefer the federal over the State forum were § 768.72 not applied

---

**15.** The Court in *Tennant* did qualify its holding by allowing defendants to obtain protective orders preventing disclosure where they could establish that no "actual factual basis" yet existed for punitive damages. *Id.* However, even this qualification conflicts substantially with § 768.72 to the extent it places the onus on defendant to move for protection from disclosure, rather than presuming protection, and places the burden on defendant to show the insubstantiality of plaintiff's case, rather than on plaintiff to establish the reasonableness of its punitive claim.

**16.** Undoubtedly, the pleading provisions of § 768.72 also serve an integral part of the State's policy of curing past abusive pleading practices which have contributed to an "insurance availability and affordability crisis." Preamble, Tort Reform and Insurance Act of 1986, Ch. 86–160, 1986 Fla.Laws 695, 699. Yet in view of the immense challenge § 768.72 presents to the strong federal interest in maintaining a system of notice pleading, the statute's conflict with Rule 8—and the resulting virtual presumption of its non-applicability in federal court—cannot be avoided.

**17.** The court is also mindful of the fact that the legislature's passage of § 768.72 could be deemed the creation of a new evidentiary privilege. Such a construction would remove the issue from the domain of *Erie* entirely in that the federal rules of practice compel application of state rules of privilege in diversity actions. Rule 26 allows only for the discovery of matters "not privileged". Federal Rule of Evidence 501 provides that, as regards diversity claims, privileges "shall be determined in accordance with State law." State law privileges are one of the traditional exceptions to application of federal discovery rules in the federal courts. 8 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE: § 2005 at 27–28 (1970); *see also id.* § 2020 at 178 (the federal courts have shown little inclination to broaden traditional categories of privilege "except as compelled by state statutes in diversity cases"). *See e.g., Scott v. McDonald*, 70 F.R.D. 568 (N.D.Ga.1976) (in diversity case, state statute excluding medical review proceedings from discovery was controlling).

there, hoping to gain access to otherwise protected financial records for their own sake or with the hope of using the threat of such sensitive discovery as an otherwise unearned bargaining chip. *See Tennant,* 377 So.2d at 1170 (allowing financial worth discovery when no actual factual basis for punitive liability exists would unnecessarily expose defendants' personal and private financial affairs "and, in some cases, the threat of such exposure might be used by unscrupulous plaintiffs to coerce settlement from innocent defendants"); *see e.g., Davis v. Ross,* 107 F.R.D. at 328 (application of New York rule prevented plaintiff from discovering famous entertainer's net worth and annual income until punitive liability established).

Though the potential class of plaintiffs which would be tempted to forum shop were § 768.72 disregarded by federal courts is likely small, it is well-defined. And it is precisely that class of plaintiffs which the statute seeks to keep at bay. Accordingly, this court finds the discovery provision of § 768.72 substantive for *Erie* purposes and will give it effect in this action.[18]

### (3) Applying the Discovery Aspects of § 768.72

■ Under normal circumstances, application of § 768.72's discovery provision will likely come before the court in the guise of a motion for protective order by the defendant or on a motion to compel or for leave to seek discovery of financial worth by the plaintiff. Here, Plaintiff, in opposing the defendants' motion to dismiss its punitive claim, has submitted a proffer of evidence. Plaintiff's proffer reasonably supports the assertions in its Complaint that, prior to purchasing three South Florida shopping centers, SWIB was fraudulently deceived as to the number and extent of side agreements existing between the various limited partnerships and the shopping centers' tenants, that the number and extent of the undisclosed side agreements caused Plaintiff to substantially overvalue the centers—and that the deceptions were willfully and wantonly perpetrated to cause Plaintiff's overvaluation. Accordingly, Plaintiff is entitled to seek discovery of the defendants' financial worth.[19]

In reaching this finding, the court has resisted applying the statute as a summary judgment adjudication, which is what the parties apparently have sought to undertake. The Plaintiff's submission of exhibits to substantiate its claim has elicited a barrage of briefs and counter-proffers of evidence by the defendants seeking to disprove SWIB's claim largely by arguing their own evidence.[20] The court seriously doubts that the statute intended such a fact-intensive investigation into the merits of Plaintiff's punitive claim. Without attempting to determine precisely what type of showing is required by § 768.72, the court believes it must ultimately be a lesser standard than that required for summary judgment. Though the burden is on SWIB to survive a § 768.72 challenge of insufficiency, *see Will v. Systems Engineering Consultants,* 554 So.2d 591, 592 (Fla.App. 3 DCA 1989), the standard of proof required merely to assert Plaintiff's punitive claim must be lower than that needed to survive a summary adjudication on its merits. As the Florida courts have noted, a § 768.72 challenge more closely resembles a motion to dismiss that additionally requires an evidentiary proffer and places the burden of persuasion on the plaintiff. *Id.* In considering a motion to dismiss, factual adjudication is inappropriate as all facts asserted—or here, reasonably established—by the plaintiff are to be taken as true. *Conley v. Gibson,* 355 U.S. 41, at 45–46, 78 S.Ct. 99, at 101–02, 2 L.Ed.2d 80,

---

18. Of course, the application of § 768.72 in this instance and in future instances only pertains to discovery relating to punitive damage claims arising under the court's diversity jurisdiction. *See Ragan,* 337 U.S. 530, at 533, 69 S.Ct. 1233 at 1234–35, 93 L.Ed. 1520; *Brennan v. City of Minneola Fla.,* 723 F.Supp. 1442, 1443 (M.D.Fla. 1989).

19. Because Plaintiff has not alleged that Defendants Edward Kiss, Peter Rubin, and Zaremba Investment, Inc. were part of the fraudulent conspiracy, Second Amended Complaint at Para. 57, the court assumes Plaintiff is not seeking punitive damages against them, and the Order allowing discovery of financial worth shall not apply as to those defendants.

20. *See* note 1, *supra.*

at 84. As such, the court has given recognition only to those assertions of the defendants which would show Plaintiff's factual bases to be patently false or irrelevant, and has paid no heed whatsoever to the defendants' alternative evidentiary proffers.[21] Fuller adjudication of Plaintiff's punitive claim will have to wait another day.

## II.   Attorneys' Fees

■ The defendants have also moved to dismiss Plaintiff's claim for attorneys' fees. It is well settled that under Florida Law the parties bear their own fees absent an agreement or statute providing otherwise. *Fox v. City of West Palm Beach*, 383 F.2d 189, 195 (11th Cir.1967); *Estate of Hampton v. Fairchild–Florida Constr. Co.*, 341 So.2d 759, 761 (Fla.1977). The Plaintiff has shown no statutory or contractual basis for asserting a demand for attorneys' fees under any of its four claims. In fact, Plaintiff has failed to respond in any manner to the defendants' attempt to void the claim for fees. Accordingly, defendants' motion to dismiss SWIB's claim for attorney fees shall be granted.

## ORDER

For the foregoing reasons, it is hereby

ORDERED and ADJUDGED that the defendants' motion to dismiss Plaintiff's claim for punitive damages is DENIED as the pleading provisions of Florida Statutes § 768.72 shall not be given effect by this court. It is further

ORDERED and ADJUDGED that the discovery provision of Florida Statutes § 768.72 shall be given effect by this court and that Plaintiff has met that provision's standard for obtaining discovery of the defendants' financial worth. It is further

ORDERED and ADJUDGED that the defendants' motion to dismiss Plaintiff's claim for attorney fees is GRANTED.

---

21. Indeed, a "proffer" according to traditional notions of the term, connotes merely an "offer" of evidence and neither the term standing alone nor the statute itself calls for an adjudication of the underlying veracity of that which is submitted, much less for countervailing evidentiary submissions.